UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>                          *Plaintiff*,<br><br>v.<br><br>SEAN COMBS, GARREN JAMES, and COWBOYS4ANGELS,<br><br>                          *Defendants*. | Civ. No. 1:25-cv-01652-LAP<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff John Doe, by and through his attorneys, Eisenberg & Baum, LLP, hereby states his Complaint against Defendants Sean Combs, Garren James, and Cowboys4Angels allege as follows based upon personal knowledge and information and belief:

**PRELIMINARY STATEMENT**

1. In coordination with Garren James and his "Cowboys4Angels," Sean Combs lured John Doe to be sexually assaulted and then threatened him to stay quiet: "you better not say a word to anybody about this. Did you hear me? . . . I'm not fucking playing with you. If I can get Pac hit, what the fuck do you think can happen to you?" Fearing for his life, John Doe affirmed that he would not say anything about the assault.

2. Doe understood "Pac" to refer to Tupac Shakur, a well-known recording artist who was murdered. Given Combs' statement, Doe reasonably believed that Combs was capable of orchestrating similar harm to him.

3. Sean "Diddy" Combs is one of the most powerful and influential figures in music. Media reports and public knowledge at the time suggested a potential connection between Sean Combs and the murder of Tupac Shakur, contributing to the credibility of Combs's threat in Doe's mind.

4.     Duane "Keffe D" Davis, charged with in the 1996 shooting death of Tupac, has claimed that Defendant offered him a million dollars to orchestrate the hit.[1] Last fall, Tupac's family hired a lawyer to investigate any connection between Defendant and Tupac's murder:[2] And another lawsuit alleges that Defendant raped a woman with a remote control after she suggested he has involvement with Tupac's murder.[3]

5.     Due to Combs' credible threats and Doe's fear for his life, Doe was unable to immediately report the assault or pursue legal action. This fear constituted an extreme form of intimidation that prevented Doe from timely commencing an action. Combs' influence and power as a celebrity further amplified Doe's fear of retaliation even during the pendency of his criminal trial. This is not a vague or speculative fear of harm; it is a direct, specific, and credible threat of lethal retaliation from a man with a documented history of violence and the resources

## PARTIES

6.     Plaintiff John Doe is an individual.

7.     Defendant Sean Combs is an individual.

8.     Defendant Garren James is an individual.

9.     Defendant Cowboys4Angels was at all relevant times a male companion service owned, operated, and/or managed by Defendant Garren James.

---

[1] https://www.newsnationnow.com/banfield/tupac-shakurs-possible-diddy-connection-to-murder/; https://www.iheart.com/content/2024-07-24-keefe-d-worked-with-police-in-attempt-to-connect-diddy-to-2pacs-murder/#:~:text=Before%20the%20filing%2C%20law%20enforcement,completely%20false%2C%E2%80%9D%20Diddy%20Said.
[2] https://www.billboard.com/music/music-news/tupac-shakur-family-hires-investigate-link-to-diddy-1235793773/
[3] https://people.com/sean-diddy-combs-accused-raping-woman-remote-control-8728249

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction for the federal law claim under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for state and/or common law claims under 28 U.S.C. § 1367 because the claims are substantially related to the federal law claim.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, the acts and omissions giving rise to this Complaint occurred in this District.

**STATEMENT OF FACTS**

12. In 2012, John Doe was an aspiring actor and model, as well as a contractor for male companion service "Cowboys4Angels" based out of Florida.

13. Prior to meeting Combs, Defendant Garren James instructed Doe to do everything that Combs asked without question, to never talk to anyone about his experience with Combs, that Combs was the service's best client, and that Combs would either "make or break" Doe's career in the entertainment industry (in addition to lucrative financial compensation).

14. After initially meeting Combs through this male companion service, Doe would travel from Florida where he resides to New York City at Combs' request.

15. When Doe arrived at the InterContinental Hotel in New York City, he was brought into a suite where Combs soon ordered Doe to perform sexual acts upon a female companion of Combs'.

16. During this time, Combs had Doe drink from a water bottle and then Combs rubbed baby oil all over Doe's body, one or both of which made Doe feel as if he had been drugged and not in complete control of his body.

17. Doe was directed by Combs to perform oral and penetrative sex on his female companion for multiple hours, degrading her and directing Doe to degrade and perform degrading

acts upon her.

18. After these acts concluded, Doe went to the bathroom.

19. While in the bathroom, Combs entered and said, "I really want you to stay, let's turn up, let's turn up."

20. Doe reiterated that he was not feeling well and needed to leave. Combs replied saying, "No, we're gonna have some fun," and grabbed Doe's penis while he began to simultaneously touch himself.

21. Combs then let go of Doe's penis and began inserting his finger into Doe's anus without Doe's consent.

22. He continued the assault, pinning Doe to the wall and forcing his penis into Doe's rectum. Doe continually told Combs to stop, screaming "no" because he was in pain.

23. Combs continued the assault for 4-5 minutes and forcibly anally raped Doe.

24. When Combs removed his penis from Doe's rectum, he began to threaten him, saying things like, "you better not say a word to anybody about this. Did you hear me?" Doe affirmed that he had heard him. Combs then threatened to have him murdered: "I'm not fucking playing with you. If I can get Pac hit, what the fuck do you think can happen to you?"

25. Doe, fearing for his life, again affirmed that he would not say anything about the assault.

26. Doe already reasonably feared for his life because his sexual assaulter was threatening to kill him immediately after raping him, and this was exacerbated by the fact that Doe's familiarity with allegations that Combs coordinated Tupac Shakur's murder.

27. Indeed, Doe discussed the threat with other contractors within Garren James' companion service, who agreed that Combs had a reputation of involvement in organized crime

4

within the entertainment industry, a sexual deviant, and a person with a demonstrated ability to eliminate his opponents.

28. Combs threatened Doe again by calling Garren James; Combs stated that he wanted to kill Doe. This threat and the threat alluding to Tupac Shakur caused Doe to refrain from timely raising a civil suit against one of the most powerful figures in music.

29. Doe feels safe coming forward not only because Combs is under the spotlight of law enforcement but also because Combs is in custody. In other words, Combs is not the threat he was years ago.

30. As soon as the indictment was released with a criminal trial scheduled, Doe felt that the threats ceased to be operational, especially with the spotlight on Combs and all of his criminal and civil cases.

31. In addition to suffering severe emotional and psychological distress from Defendant's assault, Doe's ability to continue his business and earn income was adversely affected. Combs's actions, by conspiring with Garren James to use the companion service as a front for sexual assault and threatening Doe into silence, directly interfered with and harmed Doe's business and property interests as a contractor, an actor, and a model.

32. Upon information and belief, Defendants Garren James and his Cowboys4Angels service were fully knowledgeable about Combs' propensity for sexual violence, his intent to lure and subsequently assault Plaintiff, and were complicit in Combs' sex trafficking of Doe and other vulnerable individuals.

33. Doe did not learn of the criminal enterprise until the criminal trial began and witnesses testified. Doe otherwise had no knowledge or means to know the inner workings of the criminal enterprise—not at least until it became public at trial. Even the indictment was only an

accusation.

34. Given the traumatic events he experienced, Doe could not attend modeling or acting auditions and abstained from working for Garren James' companion service for several weeks, losing him valuable career opportunities, business reputation, and income.

**FIRST CAUSE OF ACTION**
(Violation of 18 U.S.C. § 1591 – against All Defendants)

35. Plaintiff repeats, reiterates and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

36. The Trafficking Victims Protection Act ("TVPA") creates a civil remedy by victims against perpetrators and others who benefitted financially from participation in a sex trafficking venture. *See* 18 U.S.C. § 1595. A TVPA claim must plead that the defendant "knowingly . . . benefits, financially or by receiving anything of value, from participation in a [sex trafficking venture,] while knowing . . . that means of force, threats of force, fraud [or] coercion . . . will be used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2). In addition to traditional sex trafficking ventures such as forced prostitution, the TVPA equally applies in simpler and less sensational situations to "defendants who have lured [individuals], under false pretenses and with lucrative promises, for sexual purposes." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 516 n.5 (S.D.N.Y. 2018).

37. To be clear, the TVPA does not require that exploitation be of a sexual nature, despite the fact that in this case Doe was sexually exploited. The mere fact that Doe was fraudulently hired by Combs under the pretext of serving as a male companion for the purpose of Combs, James, and Cowboys4Angels's benefit is to enough to establish Doe was trafficked by Defendant. Indeed, "Congress noted that 'trafficking in persons is not limited to the sex industry,' and that 'traffickers lure [people] into their networks through false promises of decent working

6

conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models.'" *Noble*, 335 F. Supp. 3d at 514 (citing Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000)).

38. Here, by working with Cowboys4Angels, Doe had no expectation that he would be raped, drugged against his will, or forbidden from leaving. Meanwhile, that is exactly what all Defendants expected and planned, benefitting from this heinous enterprise.

39. Doe was misled by James and Cowboys4Angels into believing that he was being hired for a typical and consensual escorting encounter. In reality, Doe was sex trafficked for the purpose of being drugged and sexually assaulted.

40. Based on the instructions Doe received from Garren James encouraging him to do whatever Combs said, to never tell anybody about his encounter with Combs, and that Combs was somehow the agency's best client, it is clear that James and Cowboys4Angels had an ulterior agreement with Combs involving sex with Doe and other male companions.

41. The circumstances of Doe's rape are even more dispositive of trafficking. Doe was misled into believing that he was being hired for a typical consensual escorting encounter. In truth, however, Doe was sex trafficked for a bizarre and very unusual encounter wherein he was drugged against his will and ultimately raped.

42. In 2008, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008), Pub. L. No. 110-457, amended the statute to create a criminal enforcement mechanism against traffickers who "recklessly disregard" that a business venture has engaged in the providing or obtaining of services through force, fraud, or coercion. Pub. L. No. 110-457, § 1589(b). This expands aforementioned civil cause of action under 8 U.S.C. § 1595 by victims against individuals or entities who benefit or "attempts or conspires to benefit" from

trafficking by overlooking red flags and concerning behaviors, but are not themselves the traffickers.

43. Defendant Cowboys4Angels, along with the Intercontinental Hotel, recklessly disregarded the telltale signs of trafficking and the intent to obtain commercial sex through force, fraud, or coercion as Doe was hired with the understanding that he was not expected to perform sex acts or remove his clothing, and was only contracted to attend dates with women. However, Combs was able to develop a sexually violent criminal reputation among male companions within Cowboys4Angels, showing that Combs and Cowboys4Angels established a pattern of selling sex with the male companions through force, fraud, or coercion.

44. Combs frequently traveled to different states and had Plaintiff travel interstate under the guise of a valid business transaction. Unbeknownst to Plaintiff, Combs actually intended to sexually assault Plaintiff instead.

45. Combs knew that he would use the contractor service for which Plaintiff worked in order to create a pretext for him to meet with Plaintiff for business-related purposes and used fraud, physical force or coercion to force sexual encounters without Plaintiff's consent.

46. Combs traveled in interstate and foreign commerce, knowingly recruiting or enticing Plaintiff, offering him something of value through the companion service, knowing that he would use these offers as a means to coerce Plaintiff to have private "business" meetings with Combs and then use fraud, intimidation, force and/or coercion into forced sexual encounters without Plaintiff's consent.

47. Thus, Combs knowingly affected interstate commerce by recruiting, enticing, transporting, and soliciting Plaintiff, knowing that he intended to and did perform a commercial sex act on Plaintiff without Plaintiff's consent.

48. The other Defendants knowingly participated in Combs' venture in violation of 18 U.S.C. § 1591 by knowingly benefiting from, facilitating, and receiving value for, the venture in which Combs traveled in or utilized foreign and interstate commerce, with knowing, or in reckless disregard of the facts, that Combs would defraud, force and/or coerce sexual encounters from individuals seeking to do business with Defendants James and Cowboys4Angels.

49. Defendants each coordinated to form a venture that coerced, transported, and harbored Plaintiff, either with knowledge or in reckless disregard for the fact that Combs would use threats, means of force, and coercion to force Plaintiff into a commercial sex act.

50. The other Defendants knew or were in reckless disregard of the fact that it was an established pattern and practice of Defendant Combs to travel or have others travel in interstate and foreign commerce to lure individuals such as Plaintiff into fraudulent, forced, or coerced pretextual business meetings that, unbeknownst to Plaintiff, would lead to forced sexual acts.

51. Despite this knowledge, these Defendants continued to facilitate Combs' sex trafficking venture while knowing or recklessly disregarding the fact that he would seek to coerce, defraud, and/or force sexual activity in the guise of escort work.

52. As a result, Plaintiff experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

53. For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

**SECOND CAUSE OF ACTION**
(Violations of New York's VGMVPL – against Defendant Combs only)

54. Under New York City's Victims of Gender-Motivated Protection Law ("VGMVPL") survivors of sexual abuse have a 2-year window to file claims over gender-motivated assaults that occurred at any time in the past. The window opens on March 1, 2023 and

closes on March 1, 2025.

55.     The VGMVPL provides a civil cause of action to any person "claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a *crime of violence* motivated by gender." Title 8, N.Y.C. Admin. Code § 10-1104. The term "crime of violence" is expressly defined to mean "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction." *Id.* § 10-1103.

56.     As set forth above, Combs sexually assaulted Plaintiff, and this would not have occurred had Plaintiff been female.

57.     Combs got pleasure from hurting himself in the form of watching other men have raunchy sex with his girlfriend but then would need to dominate and reclaim his girlfriend and then dominate and claim the man who had the raunchy sex with her. Put another way, Combs exhibited a cycle of self-punishment followed by lashing out in the form of dominating/claiming the ones that punished him.

58.     Specifically, here, Combs would masturbate while watching and directing his girlfriend and other men to have sex and do specific sex acts. After a session like that ended after many hours, Combs would have sex with his girlfriend in another room. In the last encounter, Combs also raped Doe in the bathroom after having sex with his girlfriend.

59.     In any event, sexual assault is presumed to be committed with "animus" for purposes of the VGMVPL.

60.     For the reasons alleged above, Plaintiff seeks compensatory and punitive damages

in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

### THIRD CAUSE OF ACTION
(Common-law sexual assault, battery, and/or rape – against Defendant Combs only)

61. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

62. Combs intentionally attempted, without authority or consent, to harm and/or offensively contact Plaintiff, and this attempt reasonably placed Plaintiff in fear and apprehension of such harm and/or offensive contact, which conduct proximately caused him injury and damage.

63. A harmful, offensive, unprivileged, and unpermitted contact with Plaintiff actually occurred as a result of this conduct.

64. As a result, Plaintiff has experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages.

65. Combs' conduct was malicious, wanton, and willful.

66. For the reasons alleged above, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

### FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress – against All Defendants)

67. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

68. Combs' conduct and assault and battery of Plaintiff described above, facilitated by Defendants James and Cowboys4Angels, was intentional, shocking, unreasonable, and highly offensive, which caused severe and debilitating emotional distress to Plaintiff.

69. Defendants' conduct was malicious, wanton, and willful.

70. Accordingly, Plaintiff seeks compensatory and punitive damages in an amount to

11

be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## FIFTH CAUSE OF ACTION
(Violations of the Racketeer Influenced and Corrupt Organizations Act – against All Defendants)

71. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

72. The Racketeer Influenced and Corrupt Organizations ("RICO") Act, 8 U.S.C. §§ 1961 et seq., prohibits any "racketeering activity"

73. At the time of Combs' assault, Plaintiff was engaged as a contractor for a male companion service based in Florida.

74. Combs utilized this male companion service to establish contact with Plaintiff, initially presenting their interactions as legitimate business transactions.

75. Combs arranged for Plaintiff to travel interstate, from Florida to New York City, under the false pretense of these business-related meetings.

76. Combs knowingly recruited and enticed Plaintiff, offering something of value through the companion service, with the intent to coerce Plaintiff into non-consensual sexual encounters.

77. The continued use of the male companion service and the interstate travel arrangements by Combs constituted a pattern of "racketeering activity" where the service was used as a means to commit sexual assault and sex trafficking in violation of 18 U.S.C. § 1591. *See* 8 U.S.C. § 1961(1) (including among the definitions of "racketeering activity" any violation of 18 U.S.C. "sections 1581-1592 (relating to peonage, slavery, and trafficking in persons)."

78. Defendants Garren James and Cowboys4Angels were at all times aware of and complicit in this racketeering activity.

12

79. Plaintiff only learned of this racketeering activity--that is, the inner workings of Combs' criminal enterprise that caused him to be trafficked and then raped, with the filing of the criminal indictment against Combs on or about September 2024.

80. Plaintiff's ability to continue his business and earn income was directly affected by Combs' racketeering activity. Combs's actions, by using the companion service as a front for sexual assault, directly interfered with and harmed Plaintiff's business and property interests as a contractor and also as a professional model and actor.

81. Given the traumatic events he experienced, Doe could not attend modeling or acting auditions and abstained from the companion service for several weeks, losing him valuable career opportunities, business reputation, and income.

82. Accordingly, Plaintiff seeks all available remedies pursuant to 18 U.S.C § 1964(c).

**SIXTH CAUSE OF ACTION**
(Violations of New York's Trafficking Victims Protection and Justice Act – against All Defendants)

83. Plaintiff repeats, reiterates, and re-alleges each and every allegation set in detail above as if set forth more fully and at length herein.

84. New York's Trafficking Victims Protection and Justice Act ("TVPJA"), N.Y. Soc. Serv. Law § 483-bb(c)(i), creates a civil cause of action for victims of both labor and sex trafficking, specifically providing that "[a]n individual who is a victim of the conduct prohibited by section 230.33, 230.34, 230.34-a, 135.35 or 135.37 of the penal law may bring a civil action against the perpetrator or whoever knowingly advances or profits from, or whoever should have known he or she was advancing or profiting from, an act in violation of section 230.33, 230.34, 230.34-a, 135.35 or 135.37 of the penal law to recover actual, compensatory and punitive

damages, injunctive relief, any combination of those or any other appropriate relief, as well as reasonable attorney's fees."

85. In turn, N.Y. Penal Law § 135.35 prohibits labor trafficking, and N.Y. Penal Law § 230.34 prohibits sex trafficking.

86. Combs is the perpetrator, and his conduct towards Plaintiffs described above constitutes labor and/or sex trafficking in violation of New York's TVPJA.

87. Garren James and Cowboys4Angels each knowingly advanced and/or profited from, the trafficking venture(s), while knowing, or in reckless disregard of the fact, that Combs's conduct violated N.Y. Penal Law §§ 135.35 and 230.34.

88. As a result, Plaintiff experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

89. For the reasons alleged above, Plaintiffs seeks compensatory and punitive damages an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A. Enter judgment against Defendants and an award of damages, including but not limited to compensatory damages for emotional distress, nominal, punitive, and/or exemplary damages, attorneys' fees, pre- and post-judgment interest in an amount to be determined at trial by a jury; and

B. Any further relief as this Court deems just and proper.

Dated: June 16, 2025

        Respectfully submitted,

        **EISENBERG & BAUM, LLP**

By:   /s/ *Adriana Alcalde*
        Adriana Alcalde
        David John Hommel
        Andrew M. Clark
        24 Union Square East, Penthouse
        New York, NY 10003
        (212) 353-8700
        aalcalde@eandblaw.com
        dhommel@eandblaw.com
        aclark@eandblaw.com

        and

        Brian Silber
        Victim Rights Law Firm
        916 South Andrews Avenue
        Fort Lauderdale, FL 33316
        brian@victimrights.com
        *Attorneys for Plaintiff*