UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVE OTIS,

                Plaintiff,

-against-

SEAN COMBS, GARREN JAMES aka
BRETT TAYLOR, and
COWBOYS4ANGELS

                Defendants.

25-cv-1652 (LAP)

OPINION AND ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Sean Combs' motion to dismiss (the "Motion") the Second Amended Complaint (see dkt. no. 46 [hereinafter "SAC"]) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, Combs' motion is GRANTED.[1]

## I.  Background

    The following facts are drawn from the SAC and are taken as true for the purposes of resolving Combs' motion.  See Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011).

---

[1] (See Compl., dated Feb. 26, 2025 [dkt. no. 1]; Sec. Am. Compl., dated July 31, 2025 [dkt. no. 43] ["SAC"]; Def. Mot. to Dismiss, dated Aug. 7, 2025 [dkt. no. 44]; Decl. of Erica Wolff in Support, dated August 7, 2025 [dkt. no. 45]; Def. Mem. of Law in Supp. of Mot. to Dismiss, dated Aug. 7, 2025 [dkt. no. 46]; Pl. Mem. of Law in Opp'n to Mot., dated Sept. 4, 2025 [dkt. no. 50]; Def. Reply Mem. of Law in Supp. of Mot., dated Sept. 25, 2025 [dkt. no. 64].)

**A. Factual Background**

In 2012, Plaintiff Steve Otis ("Plaintiff") worked as a contractor for co-defendant Cowboys4Angels, a male companion service based in Florida. (SAC ¶ 12.)[2] During his time at Cowboys4Angels, Plaintiff pursued an acting and modeling career. (Id.) As alleged, co-defendant Garren James, an agent of Cowboys4Angels, arranged for Plaintiff to meet Combs, whom James described to Plaintiff as the companion service's "best client." (Id. ¶ 13.) James admonished Plaintiff to "do everything that Combs asked without question" and refrain from ever sharing details about Plaintiff's experiences with Combs because, in James' view, Combs could "make or break" Plaintiff's desired entertainment career. (Id.)

i. **The Sexual Assault**

In 2012, Plaintiff traveled to the InterContinental Hotel in New York City at Combs' request. (Id. ¶ 15.) Upon arrival, Plaintiff met Combs at Combs' hotel suite and was then ordered by Combs to perform oral and penetrative sexual acts upon Combs' female companion. (Id. ¶¶ 15, 16.) Plaintiff alleges that during

---

[2] The SAC is silent on when Plaintiff's purported contract work for Cowboys4Angels began and ended.

2

this encounter, Combs made Plaintiff drink from a water bottle and lathered Plaintiff's body in baby oil. (Id. ¶ 16.)

After several hours performing degrading acts upon the female companion at Combs' behest, Plaintiff went to the bathroom. (Id. ¶¶ 17, 18.) Combs followed Plaintiff into the bathroom and pleaded with him to stay and "turn up." (Id. ¶ 19.) Plaintiff rebuffed Combs' request and stated that Plaintiff needed to leave because he was feeling ill. (Id. ¶ 20.) Combs replied "No, we're gonna have some fun." (Id.) Combs then sexually assaulted Plaintiff for four to five minutes. (Id. ¶¶ 20-23.)

Following the sexual assault, Combs warned Plaintiff to "not say a word to anybody about this." (Id. ¶ 24.) Combs then reiterated that he wasn't "fucking playing with [Plaintiff]" and that if "[Combs] could get Pac hit,[3] what the fuck do you think can happen to you [Plaintiff]?" (Id.) Plaintiff understood these statements as threats against Plaintiff's life. (Id. ¶¶ 26, 27.)

### ii. Events Following the Sexual Assault

On an unspecified date following the assault, Combs contacted James and stated to James that Combs desired to kill Plaintiff, although the SAC does not specify whether or when Plaintiff became aware of this conversation between Combs and James. (Id. ¶ 28.)

---

[3] Plaintiff understood "Pac" to refer to Tupac Shakur. (Id. ¶ 26.)

3

Plaintiff also discussed Combs' threats with fellow Cowboys4Angels contractors who warned him about Combs' purported ties to organized crime, penchant for sexual deviance, and supposed ability to "eliminate his opponents." (Id. ¶¶ 27, 28.) Plaintiff does not specifically allege any further contact with Combs after the events in 2012.

Because of these alleged threats and Combs' reputation, Plaintiff elected not to pursue legal action at the time. (Id. ¶ 28.) In 2025, Plaintiff decided to come forward after Combs' September 12, 2024 federal criminal indictment for racketeering and sex trafficking charges concerning other alleged victims. (Id. ¶ 29, 30.) At this point, Plaintiff believed Combs' threats "ceased to be operational." (Id. ¶ 30.)

### B. Procedural History

Plaintiff commenced this action against Combs on February 26, 2025. (See dkt. no. 1.) On July 31, 2025, Plaintiff filed the Second Amended Complaint naming Garren James and Cowboys4Angels as co-defendants and alleging six causes of action under federal, New York State, and New York City local law. (See dkt. no. 43.) These included:

(1) violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1591, against all Defendants (Count One);

(2) violation of the Victims of Gender-Motivated Violence Protection Law, 8 N.Y.C. Admin. Code § 10-1104, against Combs only (Count Two);

(3) New York common law sexual assault, battery, and/or rape, against Combs only (Count Three);

(4) New York common law intentional infliction of emotional distress, against all Defendants (Count Four);

(5) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq., against all Defendants (Count Five); and

(6) violation of the New York Trafficking Victims Protection and Justice Act, N.Y. Soc. Serv. Law § 483-bb(c)(i), against all Defendants (Count Six).

(See SAC ¶¶ 35-89.) The SAC bases the Court's subject-matter jurisdiction purely on Plaintiff's federal TVPA and RICO claims, which in turn provide supplemental jurisdiction over Plaintiff's non-federal claims. (See id. ¶ 10.) The SAC does not allege any form of diversity jurisdiction that could independently sustain the non-federal claims.

On August 7, 2025, Combs moved to dismiss all counts with prejudice as to him individually.[4] (Dkt. nos. 44, 45, 46.) Plaintiff opposed Combs' motion by memorandum of law filed on September 4, 2025. (Dkt. no. 50.) Combs replied on September 25, 2025. (Dkt. no. 65.)

## II. Legal Standard

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). That "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing

---

[4] As Combs' motion only seeks dismissal on behalf of himself individually, the Court does not, at this time, make any ruling regarding the other named co-defendants.

court to draw on its judicial experience and common sense." Id. at 679.

Consideration of a motion to dismiss requires the court to "accept as true all factual allegations and draw from them all reasonable inferences" in the plaintiff's favor. Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013) (citations omitted). The court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (citations omitted). As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).

When the court grants a motion to dismiss under Rule 12(b)(6), leave to amend the complaint should be refused if there is no basis for concluding that the plaintiff can state a claim and thus permitting an amendment would be futile. See Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002); see also, e.g., Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000).

### B. Statutes of Limitation

Statutes of limitations play a critical role in the administration of justice "by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." CTS Corp. v. Waldburger, 573 U.S. 1, 8-9 (2014). Typically, a statute of limitations provides an affirmative defense that is raised in a defendant's answer. But "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise th[at] affirmative defense in a pre-answer motion to dismiss" under Rule 12(b)(6). Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). When considering a motion to dismiss that includes a statute of limitations defense, the Court may not generally consider matters outside the pleadings. See id.

With respect to Plaintiff's federal claims,[5] which provide the sole basis for the Court's subject-matter jurisdiction, a civil claim brought by an adult victim under the Trafficking Victims Protection Act, 18 U.S.C. § 1595 (Count One) must be commenced within ten years after the cause of action arises. See 18 U.S.C.

---

[5] Because the Court ultimately declines to exercise supplemental jurisdiction over Plaintiff's state and local law claims, this Opinion solely examines the applicable limitations periods for the relevant federal causes of action.

§ 1595(c)(1)-(2). A civil RICO action (Count Five), meanwhile, must be commenced within four years of the alleged injury or, "in the case of an unknown injury, within four years of the triggering of a plaintiff's duty to inquire." See e.g., Rivers v. Combs, No. 25-CV-1726 (JSR), 2025 WL 2414117, at * 4 (S.D.N.Y. Aug. 19, 2025); McKenzie v. Artists Rts. Soc'y, Inc., 757 F. Supp. 3d 427, 442-43 (S.D.N.Y. 2024).

### C. Equitable Tolling

Where a claim is otherwise time-barred, a district court's equitable powers allow it "to extend a statute of limitations on a case-by-case basis to prevent inequity." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). This is known as the doctrine of equitable tolling.[6] "Federal law governs the tolling of federal

---

[6] As discussed below, the Court construes Plaintiff's argument as invoking the doctrine of equitable tolling, rather than equitable estoppel. While the distinction between these two doctrines has become muddied, see Levin v. Sarah Lawrence Coll., 747 F. Supp. 3d 645, 673 n.15 (S.D.N.Y. 2024) (describing confusion from precedent "that tends to blur the doctrines of equitable tolling, equitable estoppel, and fraudulent concealment"), there is an important distinction between equitable estoppel and equitable tolling. Equitable estoppel may be invoked where "the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct," such as where a defendant breaks a prior promise not to assert a statute of limitations defense. See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001). Equitable tolling, by contrast, is more permissive in that it "does not require that the defendant against whom it is asserted has engaged in any form of bad act to delay suit," so long as (cont'd)

9

claims," Russo v. Mason-McDuffie Inv. Co. Inc., 927 F.2d 610 (9th Cir. 1991), and "Congress is presumed to incorporate equitable tolling into federal statutes of limitation." Saint-Jean v. Emigrant Mortg. Co., 129 F.4th 124, 144 (2d Cir. 2025).

A district court's power to invoke equitable tolling, however, is circumscribed. See Doe v. United States, 76 F.4th 64, 71 (2d Cir. 2023). To toll the statute of limitations for a federal claim, a plaintiff must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian Tribe of Wisc. v. United States, 577 U.S. 250, 255 (2016). "The law prohibits a judge from exercising her discretion where these two elements are missing." Doe, 76 F.4th at 71.

Accordingly, in asking the Court to equitably toll a limitations period, a plaintiff bears the burden to "plausibly alleg[e] that [he] fall[s] within an exception to the applicable statute of limitations." Levin v. Sarah Lawrence College, 747 F. Supp. 3d 645, 671-72 (S.D.N.Y. 2024) (internal citations omitted). At the pleading stage, a plaintiff need only allege facts that plausibly suggest equitable tolling can be invoked. See Franck v.

---

(cont'd) some "extraordinary circumstance" prevented timely filing. Levin, 747 F.Supp.3d at 673.

10

N.Y. Health Care, Inc., 2022 WL 4363855, at *10-12 (S.D.N.Y. Sept. 21, 2022), report and recommendation adopted, 2023 WL 2474559 (S.D.N.Y. Mar. 11, 2023). If, however, a plaintiff fails to plead specific factual allegations indicating that he pursued his rights diligently and was frustrated by extraordinary circumstances, a district court may reject a claim of equitable tolling and dismiss claims as time barred. See id. at *11; see also Lomako v. N.Y. Inst. of Tech., 440 F. App'x 1, 3 (2d Cir. 2011) (summary order) (rejecting equitable tolling where underlying complaint "lacked any factual allegations" other than "vague and conclusory" assertions that did "not suggest a plausible basis for equitable tolling.").

## III. Discussion

In his motion to dismiss, Combs argues that all of the applicable statutes of limitations have run and that Plaintiff's claims—including the federal RICO and TVPA claims—are time barred. (See dkt. no. 46 at 10-19.) Plaintiff does not dispute that the federal statutes of limitation have run but argues that equitable tolling[7] nonetheless salvages his otherwise untimely claims. (See dkt. no. 50 at 7-10.) The Court disagrees.

---

[7] In his opposition brief, Plaintiff argues that his claims are "tolled by the doctrine[e] . . . of equitable tolling." (Dkt. no. 50 at 7.) At later points, however, Plaintiff conflates equitable tolling with the doctrine of equitable (cont'd)

11

The crux of Plaintiff's argument is that he was "paralyzed . . . with fear [of Combs]" in view of Combs' prior threats and Plaintiff's fear of Combs prevented Plaintiff from seeking any legal recourse "until [Combs] was in jail awaiting criminal trial." (See dkt. no. 50 at 8-9.) Plaintiff points to two specific threats: (i) Combs' immediate post-assault threat to murder Plaintiff if he revealed the incident to anyone; and (ii) an undated conversation between Combs and James in which "Combs threatened Otis again by calling Garren James" and "stated that he wanted to kill Otis." (See dkt. no. 43 ¶¶ 24, 28.)  The Court must therefore consider whether these threats created an "extraordinary circumstance" that "stood in [Plaintiff's] way of commencing [the] case" prior to the expiration of the limitations period.  See Doe, 76 F.4th at 71-72.

"Among the extraordinary reasons that may justify equitable tolling of a statute of limitations is a defendant's efforts to threaten or retaliate against a plaintiff if [he] files a claim against him."  Id. at 72 (internal citations omitted).  Courts sometimes label this theory of tolling as so-called "retaliation tolling." Gilmore v. Combs, No. 24-CV-8440 (JPO), 2025 WL 1425326,

---

(cont'd) estoppel. See id. at 8 ("[E]quitable estoppel [is] designed for precisely this type of situation."). As explained above, the Court construes Plaintiff's argument as invoking equitable tolling, rather than equitable estoppel.

12

at *3 (S.D.N.Y. May 16, 2025). Specifically, in the prison context, courts have suggested that retaliation tolling may be appropriate where a plaintiff alleges "specific facts showing that a reasonable fear of retaliation by [his or her] jailers prevented them from filing a timely complaint." Doe, 76 F.4th at 71-72 (internal quotations and citations omitted).

Other courts have recognized a related species of tolling known as "duress tolling." Duress tolling requires a plaintiff to allege (1) "'threats or force by the defendant,'" and (2) "'the submission of the plaintiff's free will to those threats.'" Gilmore, 2025 WL 1425326, at *4 (quoting Overall v. Est. of Klotz, 52 F.3d 398, 404 (2d Cir. 1995)). Critically, the threats or force must be "continuous" to warrant duress tolling. Id.; see also Funk v. Belneftekhim, No. 14-CV-0376 (BMC), 2019 WL 3035124, at *3 (E.D.N.Y. July 11, 2019) ("Duress as a basis for tolling applies only when defendants' conduct constitutes a continuation of the underlying [duress] tort . . . .").

Whether construed as theories of duress or retaliation tolling, Plaintiff's arguments fail for several reasons. First, the only well-pleaded threat against Plaintiff is too attenuated from the instant suit to support any form of equitable tolling. Plaintiff alleges that this threat was made in 2012, immediately following the sexual assault. (SAC ¶ 24.) However, the SAC does

13

not allege that Plaintiff had <u>any</u> further contact, direct or otherwise, with Combs or his agents over the intervening thirteen-year period that preceded this suit. The lack of any subsequent contact with Combs leads this Court to conclude that Plaintiff cannot allege the requisite "reasonable fear of retaliation" to warrant tolling. <u>See</u> <u>Doe</u>, 76 F.4th at 72; <u>Gilmore,</u> 2025 WL 1425326, at *3 (tolling inappropriate where Plaintiff "does not identify any communication with either Defendant after the 1996 incident").

Second, while Plaintiff claims that Combs reiterated his threat in a later conversation with <u>James</u>, Plaintiff does not specify when that alleged threat was made, whether James transmitted it to Plaintiff, or when Plaintiff even became aware of the undated threat. (<u>See</u> <u>id.</u> ¶ 28.) Without any such factual allegations, the alleged second threat is insufficient to provide a basis for retaliation or duress tolling.

Third, Plaintiff alleges no facts to support his conclusory allegation that Combs wielded "substantial control" over Plaintiff in the decade between the alleged assault and Plaintiff's filing of this action. (<u>See</u> dkt. no. 50 at 9.) The SAC is devoid of any factual allegations suggesting that Combs exerted influence over Plaintiff to the degree that a jailer does over an inmate. Indeed, the SAC does not allege that Plaintiff lived with or near Combs,

14

or that Combs otherwise had any supervision over Plaintiff in any other context. See Gilmore, 2025 WL 1425326, at *4-5.

It would be one thing if Plaintiff alleged that he continued to have contact with Combs in the years that followed the alleged assault, thus putting Combs in a potential position to carry out his threats or otherwise coerce Plaintiff to refrain from filing suit. But the SAC contains no such allegations. Rather, the gist of Plaintiff's allegations is that Combs' prominent influence, coupled with his purported ties to the murder of Tupac Shakur, left Plaintiff in fear of filing this lawsuit at virtually every moment over the decade following Combs' assault. But even to the extent that Combs occupied a position of considerable power and influence in the media industry at large, there are no specific allegations as to how Combs would have controlled "[Plaintiff's] life and safety" at an individual level. (See dkt. no. 50, at 9.); see also Gilmore, 2025 WL 1425326, at *4 (allegations of defendant's "longstanding culture of intimidation" were insufficient to warrant tolling).

Finally, the limited details of the SAC demonstrate that Plaintiff cannot allege a causal connection between Combs' post-assault threats and Plaintiff's failure to bring this suit. For one, Plaintiff himself, upon return to Florida, "discussed the threat with other contractors" notwithstanding Combs' alleged

15

command not to share the incident with anyone. (See SAC ¶ 27.) Nor does the SAC contain any allegations as to how Combs took steps to control, manipulate, or brainwash Plaintiff over the decade-plus that followed the 2012 assault. See Levin, 747 F. Supp. 3d at 674-75 (rejecting tolling when a plaintiff failed to adduce factual allegations against her alleged trafficker that "demonstrate[d] a causal connection between how she felt and her ability to pursue her rights").

In sum, the Court does not discount the gravity of the assault allegations made by Plaintiff against Combs. But Plaintiff alleges insufficient facts to infer that Combs' alleged post-assault threats were "extraordinary circumstances" that prevented Plaintiff from filing this suit for thirteen years. Accordingly, the Court is without power equitably to toll Plaintiff's untimely federal claims. Counts One and Five are dismissed.

### D. Plaintiff's State and Local Claims

Having dismissed both of Plaintiff's federal claims, only Plaintiff's state and local law claims remain. The Court need not decide whether these remaining claims are timely, because the Court declines to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it

has original jurisdiction."). "The Second Circuit takes a particularly strong view that district courts should decline to exercise supplemental jurisdiction in the absence of a 'clearly articulated federal interest.'" Cummings v. City of New York, No. 19-CV-7723 (CM), 2021 WL 1664421, at *2 (S.D.N.Y. Apr. 28, 2021) (quoting Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 123 (2d Cir. 2006)). Accordingly, the state and local law claims are dismissed, without prejudice, to renewal in an appropriate state court.

## IV. Leave To Amend

Plaintiff has not requested leave to amend the SAC in the event his claims are dismissed. Nor has Plaintiff indicated that he possesses additional facts that would cure the substantive defects in the SAC. Where, as here, a "plaintiff has neither requested leave to amend, nor indicated additional facts that would be added to the complaint, a court is not required to grant leave to amend sua sponte." Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC, No. 14-CV-1370 (ER), 2015 WL 5439217, at *4 (S.D.N.Y. Sept. 14, 2015); see also Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P., 351 F. App'x 472, 474 (2d Cir. 2009) (summary order) ("Given that [Plaintiff] did not move for leave to replead in opposition to [Defendant's] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, sua sponte,

leave to replead."). Accordingly, Plaintiff's federal claims are dismissed without leave to amend.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Combs' motion to dismiss as to Counts One and Five with prejudice. The Court dismisses the remaining state and local law claims (Counts Two, Three, Four, and Six) without prejudice to renewal in a state court of competent jurisdiction.

Because the Court decides Combs' motion on the papers, his request for oral argument is DENIED as moot. The Clerk of Court is directed to terminate dkt. nos. 21, 44, and 65 and terminate this action against Combs individually.

Counsel for the remaining Defendants and Plaintiff's counsel shall confer and inform the Court by letter no later than January 12, 2026 how they wish to proceed.

SO ORDERED.

Dated:   New York, New York
         January 5, 2026

_____
LORETTA A. PRESKA
Senior United States District Judge