UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

STEVE OTIS,                                        Case No.  25-cv-01652 (LAP)

                 Plaintiff,

     -against-                              **ORAL ARGUMENT REQUESTED**

GARREN JAMES aka BRETT TAYLOR,
and COWBOYS4ANGELS,

                Defendants.

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COWBOYS4ANGELS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

LAW OFFICES OF THOMAS A. BIZZARO, JR., P.C.
*Attorneys for Defendant*
*Cowboys4Angels*
23 Green Street – Suite 309
Huntington, New York 11743
631-380-3297
tbizzaro@tab-law.com

Of Counsel:

    Thomas A. Bizzaro, Jr., Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................3

PRELIMINARY STATEMENT...................................................................7

PROCEDURAL HISTORY AND THE SECOND AMENDED COMPLAINT...................9

PLAINTIFF'S THIRD AMENDED COMPLAINT.........................................................11

STANDARD OF REVIEW..........................................................................12

ARGUMENT...........................................................................................13

ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................13

A.  Plaintiff's First Cause of Action Under 18 U.S.C.A. § 1591 (West) and
    1595 (West) is Time Barred

B.  Plaintiff's Second Cause of Action Under the New York City
    Victims of Gender Motivated Protection Law is Time-Barred and
    Any Purported Revival is Preempted...........................................................16

C.  Plaintiff's Third Cause of Action Alleging Intentional Infliction
    of Emotional Distress is Time Barred.........................................................21

D.  Plaintiff's Fourth Cause of Action Under the Racketeer Influenced
    Corrupt Organizations ("RICO") Act is Time-Barred....................................22

E.  Plaintiff's Fifth Cause of Action Alleging a Claim Under The
    New York State Trafficking Victims Protection and Justice Is Untimely.............25

F.  No Tolling Doctrine Applies to Save the Time-Barred Claims.......................27

CONCLUSION......................................................................................35

\

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Adams v. Jenkins,
No. 115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005)........................................35, 36

AJ Energy LLC v. Woori Bank,
No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019).................................13, 16

Albany Area Builders Ass'n v. Town of Guilderland,
74 N.Y.2d 372, 546 N.E.2d 920 (1989) .......................................................................................19

Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).........................................................13, 15

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..........................................................16

Bellino v. Tallarico,
No. 24-CV-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) .........................................18

Broccoli v. Achworth,
2025 U.S. Distr. Lexis 54305 (S.D.N.Y. 2025).............................................................................26

Cady v. Broome Cnty.,
87 A.D.2d 964, 451 N.Y.S.2d 206 (1982) .....................................................................................27

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002).........................................................................................................13

Chwick v. Mulvey,
81 A.D.3d 161, 915 N.Y.S.2d 578 (2010) .....................................................................................21

Cohen v. S.A.C. Trading Corp.,
711 F.3d 353 (2d Cir. 2013).........................................................................................................25

CTS Corp. v. Waldburger,
573 U.S. 1, 134 S. Ct. 2175, 189 L. Ed. 2d 62 (2014)................................................................14

Diaz v. City Univ. of New York,
No. 15CV1319PACMHD, 2015 WL 13746673 (S.D.N.Y. Nov. 16, 2015) ...................................34

DJL Rest. Corp. v. City of New York,
96 N.Y.2d 91, 749 N.E.2d 186 (2001)..........................................................................................19

Doe v. Bank of Am., N.A.,
819 F. Supp. 3d 314 (S.D.N.Y. 2026)...........................................................................................17

Doe v. United States,
76 F.4th 64 (2d Cir. 2023) ...............................................................................................29, 33, 35

Ellul v. Congregation of Christian Bros.,
774 F.3d 791 (2d Cir. 2014).........................................................................................................13

Fire & Police Pension Ass'n of Colorado v. Bank of Montreal,
368 F. Supp. 3d 681 (S.D.N.Y. 2019)...........................................................................................26

Franck v. New York Health Care, Inc.,
No. 21CV4955GHWJLC, 2022 WL 4363855 (S.D.N.Y. Sept. 21, 2022) ...................................30

Funk v. Belneftekhim,
    No. 14-CV-0376 (BMC), 2019 WL 3035124 (E.D.N.Y. July 11, 2019) ......................................30
Geiss v. Weinstein Co. Holdings LLC,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................................................31, 34
Ghartey v. St. John's Queens Hosp.,
    869 F.2d 160 (2d Cir. 1989) .........................................................................................................14
Gilmore v. Combs,
    No. 24-CV-8440 (JPO), 2025 WL 1425326 (S.D.N.Y. May 16, 2025) ................................. Passim
Gleason v. Gleason,
    26 N.Y.2d 28, 256 N.E.2d 513 (1970) .......................................................................................28
In re Merrill Lynch Ltd. Partnerships Litig.,
    154 F.3d 56 (2d Cir. 1998) ...........................................................................................................25
In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.,
    No. 19-CV-6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) .............................................26
Jacobus v. Colgate,
    217 N.Y. 235, 111 N.E. 837 (1916) .......................................................................................27, 28
Khan v. Reade,
    7 A.D.3d 311, 776 N.Y.S.2d 281 (2004) ....................................................................................23
Koch v. Christie's Int'l PLC,
    699 F.3d 141 (2d Cir. 2012) .....................................................................................................23, 25
Lehnert v. Ferris Fac. Ass'n,
    500 U.S. 507, 111 S. Ct. 1950, 114 L. Ed. 2d 572 (1991) ...........................................................13
Levin v. Sarah Lawrence Coll.,
    747 F. Supp. 3d 645 (S.D.N.Y. 2024) ...............................................................................14, 15, 30
Lomako v. New York Inst. of Tech.,
    440 F. App'x 1 (2d Cir. 2011) ................................................................................................30, 32
Majewski v. Broadalbin-Perth Cent. Sch. Dist.,
    91 N.Y.2d 577, 696 N.E.2d 978 (1998) .......................................................................................27
McKenzie v. Artists Rts. Soc'y, Inc.,
    757 F. Supp. 3d 427 (S.D.N.Y. 2024) ...............................................................................23, 24, 26
McNeil-Coward v. Palterovich,
    416 F. Supp. 3d 236 (E.D.N.Y. 2018) ...........................................................................................25
Menominee Indian Tribe of Wisconsin v. United States,
    577 U.S. 250, 136 S. Ct. 750, 193 L. Ed. 2d 652 (2016) ............................................................29
Noble v. Weinstein,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ...........................................................................................16
Overall v. Est. of Klotz,
    52 F.3d 398 (2d Cir. 1995) ....................................................................................28, 30, 31, 35
Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998) ...........................................................................................................13
Parker v. Alexander,
    171 F.4th 146 (2d Cir.) .........................................................................................................10, 22
Parker v. Alexander,
    779 F. Supp. 3d 361 (S.D.N.Y. 2025) ....................................................................................18, 20

Police Benevolent Ass'n of City of New York, Inc. v. City of New York,
    40 N.Y.3d 417, 224 N.E.3d 522 (2023) ....................................................................... 19
Rapaport v. Epstein,
    No. 24-CV-7439 (JGLC), 2025 WL 966794 (S.D.N.Y. Mar. 31, 2025) ....................................... 14
Rivers v. Combs,
    2025 U.S. Dist. Lexis 161235 (S.D.N.Y. 2025) ........................................................................ 26
Rivers v. Combs,
    No. 25-CV-1726 (JSR), 2025 WL 2414117 (S.D.N.Y. Aug. 19, 2025) ....................................... 23
Roeder v. J.P. Morgan Chase & Co.,
    523 F. Supp. 3d 601 (S.D.N.Y. 2021) ........................................................................................ 34
Rotella v. Wood,
    528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) ........................................................ 25
Russo v. Mason-McDuffie Inv. Co. Inc.,
    927 F.2d 610 (9th Cir. 1991) ...................................................................................................... 29
S.J. v. Choice Hotels Int'l, Inc.,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ....................................................................... 16, 27, 28
Saint-Jean v. Emigrant Mortg. Co.,
    129 F.4th 124 (2d Cir. 2025) ...................................................................................................... 29
Simcuski v. Saeli,
    44 N.Y.2d 442, 377 N.E.2d 713 (1978) ..................................................................................... 34
Staehr v. Hartford Fin. Servs. Grp., Inc.,
    547 F.3d 406 (2d Cir. 2008) ....................................................................................................... 13
Teller v. Galak,
    162 A.D.3d 959, 80 N.Y.S.3d 106 (2018) ................................................................................ 23
Tutor v. Alexander,
    2026 U.S. Dist. Lexis 76418 (S.D.N.Y. 2026) .......................................................................... 22
Verschleiser v. Frydman,
    No. 22-CV-7909, 2023 U.S. Dist. LEXIS 158963 (S.D.N.Y. Sept. 7, 2023) ............................... 26
Villalobos v. Telemundo Network Grp. LLC,
    No. 22 CIV. 7665 (JPC), 2025 WL 2687948 (S.D.N.Y. Sept. 19, 2025) ...................................... 17
Warren v. Garvin,
    219 F.3d 111 (2d Cir. 2000) ....................................................................................................... 29
Wen v. New York City Reg'l Ctr., LLC,
    695 F. Supp. 3d 517 (S.D.N.Y. 2023) ....................................................................................... 14
Zoe G. v. Frederick F.G.,
    208 A.D.2d 675, 617 N.Y.S.2d 370 (1994) ............................................................................... 33

**Statutes**

18 U.S.C.A. § 1591 (West) ....................................................................................... 2, 15
18 U.S.C.A. § 1591(a)(2) ............................................................................................ 15
18 U.S.C.A. § 1595 (West) ............................................................................................ 15
18 U.S.C.A. § 1595(c) .................................................................................................... 15
18 U.S.C.A. § 1595(c)(l)-(2) .......................................................................................... 15

18 U.S.C.A. § 1961(5) (West) ...........................................................................................24
N.Y. Judiciary Law § 219-d, 219-e (McKinney) .............................................................21
N.Y. Soc. Serv. Law § 483-bb(c) (McKinney) .........................................................27, 28
U.S.C.A. § 1595(a) ..........................................................................................................16
§ 483-bb............................................................................................................................27

## Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................7, 13, 14, 38
N.Y. C.P.L.R. 214-g (McKinney) .....................................................................18, 20, 21, 22
N.Y. C.P.L.R. 214-j (McKinney) ...........................................................................18, 20, 22
N.Y. C.P.L.R. 215 [3] (McKinney) ...............................................................................23

## Regulations

TAC 6, 32, 33, and 34 ................................................................................................12, 32
TAC ¶¶ 16-31 ..................................................................................................................15
TAC ¶¶ 41-42 ..................................................................................................................36
TAC ¶¶ 69-70 ............................................................................................................18, 21
TAC ¶¶ 86-97 ..................................................................................................................23

## Other Authorities

New York City, N.Y., Code § 10-1105 .......................................................................18, 22

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of Defendant Cowboys4Angels ("C4A") in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing, with prejudice, Plaintiff Steve Otis' ("Plaintiff") Third Amended Complaint (the "TAC").

This is the fourth pleading filed by Plaintiff arising from a single alleged incident that occurred more than thirteen (13) years ago - in 2012. Every federal and state claim asserted by Plaintiff against C4A is facially and irremediably time-barred. The applicable statutes of limitations expired years - and in some instances more than a decade - before Plaintiff commenced this action in February 2025. The TAC does not, and cannot, cure that fundamental deficiency.

Plaintiff's sole strategy for survival of his time-barred claims is to invoke equitable tolling on the theory that alleged threats by former co-defendant Sean Combs prevented Plaintiff from pursuing his legal rights for over a decade. That theory fails as a matter of law for multiple, independent reasons.

First, none of the alleged threats that form the basis of Plaintiff's tolling theory were made by Cowboys4Angels. The TAC contains no allegation - not a single one - that C4A ever threatened Plaintiff, coerced him into silence, or took any affirmative step to prevent him from pursuing his legal claims. Equitable tolling, duress tolling, and equitable estoppel each require, at minimum, conduct by the defendant sought to be charged. Absent any such conduct by C4A, no tolling doctrine can operate to save Plaintiff's claims against this Defendant.

Second, the newly added allegations in the TAC - which purport to fill the temporal and factual gaps that doomed Plaintiff's Second Amended Complaint - amount to nothing more than the addition of a year (2014) and marginal context to the same two discrete alleged threats Plaintiff

has always relied upon. Isolated threats, transmitted through third parties, do not constitute the continuous, uninterrupted course of coercive conduct required to toll any statute of limitations under New York or federal law, particularly when followed by eleven years of silence and inaction.

Third, and critically, the tolling narrative advanced by Plaintiff is directly and affirmatively refuted by sworn evidence submitted in support of this motion. The Declaration of Brett Taylor - who is himself a named defendant - establishes, among other things, that: (a) Plaintiff's last contact with C4A was in 2016, when Plaintiff voluntarily forwarded a referral for employment and accepted a referral fee - conduct entirely inconsistent with a man paralyzed by fear; (b) Taylor unequivocally denies that Combs ever threatened Plaintiff through him, and denies relaying any such threat to Plaintiff or any third party; and (c) Plaintiff's own June 2013 communications reflect not fear - but a stated intention to expose Combs and other clients unless paid - a pattern of conduct that is the antithesis of the suppressed, frightened victim Plaintiff now portrays himself to be. The Declaration of Bryan Alzate - a long-term personal friend of Plaintiff who has direct, independent knowledge of Plaintiff's conduct and statements - corroborates each of these points. Mr. Alzate attests that in 2014, Plaintiff communicated a specific plan to use public exposure of Combs as financial leverage to extract a monetary payment, and that Plaintiff's social media activity that year was motivated by extortion, not fear. Mr. Alzate further attests that at no time did he observe, hear, or otherwise become aware of C4A, Brett Taylor, or anyone associated with them threatening or coercing Plaintiff in any manner.

Fourth, Plaintiff's TVPA beneficiary liability claim independently fails on the merits because the TAC is wholly devoid of particularized factual allegations that C4A recklessly disregarded any risk that Combs would use force, fraud, or coercion against Plaintiff. A conclusory allegation that

Combs had a generalized "reputation" does not satisfy the pleading standard under Twombly and Iqbal and does not bridge the scienter gap between "should have known" and "might have been able to guess."

Fifth, Plaintiff's VGMVL claim is not saved by the January 29, 2026 amendment purporting to extend the revival window to July 29, 2027. That local law revival provision is preempted - both as a matter of field preemption and conflict preemption - by the New York State Child Victims Act and Adult Survivors Act - and as the New York Court of Appeals is now being asked to confirm in the certified question presented in Parker v. Alexander, 171 F.4th 146 (2d Cir.), certified question accepted, 45 N.Y.3d 951, 278 N.E.3d 441 (2026), certified question accepted, Parker v. Alexander, 45 N.Y.3d 951, 278 N.E.3d 441 (2026), certified question accepted, Parker v. Alexander, 45 N.Y.3d 951, 278 N.E.3d 441 (2026).

Finally, Plaintiff's RICO claim is independently defeated by Plaintiff's own pleading, which concedes he did not learn of the alleged enterprise until September 2024 at the earliest - years after that claim accrued in 2012 and expired in 2016. Moreover, the plausibility of Plaintiff's RICO claim is significantly undermined by the jury acquittal of former co-defendant Combs on RICO and sex trafficking charges - the very conduct upon which Plaintiff's civil RICO predicate acts are premised.

For all of the foregoing reasons, as more fully set forth below, C4A's motion to dismiss should be granted in its entirety and Plaintiff's TAC should be dismissed with prejudice.

### PROCEDURAL HISTORY AND THE SECOND AMENDED COMPLAINT

Plaintiff filed his initial complaint on February 26, 2025. *ECF Doc. 1*. Thereafter, now dismissed defendant Sean Combs ("Combs") filed his motion to dismiss the Plaintiff's initial

Complaint. *ECF Doc. 21-23.* In response, Plaintiff filed his First Amended Complaint on June 16, 2025. *ECF Doc. 25.* Plaintiff filed a Second Amended Complaint (the "SAC") on July 31, 2025. *ECF Doc. 43.* The Second Amended Complaint named Garren James a/k/a Brett Taylor ("Taylor") and Cowboys4Angels ("C4A") (herein collectively referred to as "Defendants") as Defendants.

The Second Amended Complaint alleged that Plaintiff worked as a contractor for Cowboys4Angels, a male companion service based in Florida. *ECF Doc. 43,* at par. 12. As alleged, Defendant Tayor, an agent for C4A, arranged for Plaintiff to meet Combs. *Id.* at 13. Taylor allegedly admonished Plaintiff "to do everything that Combs asked without question" and refrain from sharing details about Plaintiff's experiences with Combs because Combs could "make or break" Plaintiff's desired entertainment career. *Id.* In 2012, Plaintiff travelled to New York City at Combs' request. *Id* at para. 15. It is alleged that, during Plaintiff's visit with Combs, Combs sexually assaulted Plaintiff (*Id.* at par. 20-23) and Combs threatened him to not say a word about what happened which, Plaintiff understood to be a threat against his life. *Id.* at para. 26, 27. It is further alleged that, sometime after the alleged assault (on a date unspecified in the Second Amended Complaint) Combs threatened Plaintiff again by calling Defendant Taylor and stated that he wanted to kill Plaintiff. *Id.* at 28. Finally, Plaintiff alleged in the Second Amended Complaint that he only felt safe filing his Complaint (in February 2025 once Combs was in custody and his indictment (September 12, 2024) was released. *Id.* at para. 29-30. Plaintiff did not allege any further contacts with Combs, Taylor or C4A after the above alleged events.

Now dismissed Defendant Combs filed a motion to dismiss the Plaintiff's Second Amended Complaint on August 7, 2025. *ECF Docs. 44-46.* By Opinion and Order dated January 5, 2026 (*ECF Doc. 85*), the Court granted the motion to dismiss the Second Amended Complaint

(Counts 1 and 5 with prejudice and the State law claims – Counts 2, 3, 4 and 6 without prejudice to renew in state court). Specifically, the Court rejected any contention from Plaintiff that the statute of limitations with respect to his clearly time barred federal claims should be tolled. As such, the Court held that Plaintiff's federal law claims were time barred and further declined to exercise supplemental jurisdiction over Plaintiff's state law claims. *ECF Doc. 85.*

## PLAINTIFF'S THIRD AMENDED COMPLAINT

C4A filed its motion to dismiss Plaintiff's Second Amended Complaint on March 10, 2026. *ECF Doc. 98.* By Order dated April 13, 2026 (ECF Doc. 113), however, the Court, denied that motion without prejudice and provided Plaintiff the opportunity to yet again amend his Complaint based upon his contention that he could offer new facts that may "cure the perceived lack of specificity or attenuation noted in the Court's prior Opinion and Order dismissing similar claims against co-defendant Sean Combs." *ECF Doc. 113.* Plaintiff filed his TAC on April 27, 2026. *ECF Doc 119.*

In a futile attempt at resurrecting his time barred claims and curing the clear deficiencies in the Second Amended Complaint, Plaintiff has, in essence, merely added a time frame/date as to when Combs allegedly contacted Defendant Taylor and threatened Plaintiff (i.e., now alleged to have occurred in 2014) and added more context to those events. Specifically, as to events and communications between the parties (and former Defendant Combs) that took place post the alleged assault, Plaintiff has alleged for the first time in the Third Amended Complaint that:

a.　　Approximately two years after the assault, after Plaintiff posted a comment on Comb's Instagram, Combs contacted defendant Taylor and conveyed renewed warnings about Plaintiff. TAC 6, 32, 33, and 34; and

b.       The 2014 purported threat by Combs was relayed by Taylor to Plaintiff (*Id.* at 7, 9, 33, 34) and that "another Cowboys4Angels contractor besides Taylor ("Jamie a/k/a/ Tommy") separately warned Otis that Combs had repeatedly called Taylor and threaten[ed] Otis' life." *Id.* at para. 7, 36 and 37. Based upon the alleged multiple renewed threats communicated through third parties, Plaintiff alleges that his fears were cemented which prevented him from pursuing his legal remedies (*Id.* at para. 7 and 8) until Combs was in custody and his indictment was released (*Id.* at para. 43 and 44).

## STANDARD OF REVIEW

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Lehnert v. Ferris Fac. Ass'n, 500 U.S. 507, 570, 111 S. Ct. 1950, 114 L. Ed. 2d 572 (1991). While a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in plaintiff's favor, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), it "is not required to credit conclusory allegations unsupported by facts." AJ Energy LLC v. Woori Bank, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), aff'd, 829 F. App'x 533 (2d Cir. 2020).

"[A] statute of limitations defense may be decided on a Fed. R. Civ. P. 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014); accord Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) (limitations defense "may be raised by a pre-answer motion to dismiss under Fed. R. Civ. P. 12(b)(6) without resort to summary judgment procedure, if the defense appears on the face of the complaint"); Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008). "If it appears

from a complaint that the claims are prima facie time-barred, the burden is on the plaintiff to 'plausibly allege[e] that they fall within an exception to the applicable statute of limitations.'" Levin v. Sarah Lawrence Coll., 747 F. Supp. 3d 645, 653 (S.D.N.Y. 2024); accord Wen v. New York City Reg'l Ctr., LLC, 695 F. Supp. 3d 517 (S.D.N.Y. 2023), aff'd, No. 23-7506, 2024 WL 4180521 (2d Cir. Sept. 13, 2024) (same burden-shifting principle applied on motion to dismiss); Rapaport v. Epstein, No. 24-CV-7439 (JGLC), 2025 WL 966794 (S.D.N.Y. Mar. 31, 2025) (confirming that where untimeliness is clear on the face of the complaint, court proceeds to analyze any tolling or revival arguments).

Statutes of limitations play a critical role in the administration of justice "by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." CTS Corp. v. Waldburger, 573 U.S. 1, 8–9, 134 S. Ct. 2175, 189 L. Ed. 2d 62 (2014).   Typically, a statute of limitations provides an affirmative defense that is raised in a defendant's answer.  But "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise th[at] affirmative defense in a pre-answer motion to dismiss" under Fed. R. Civ. P. 12(b)(6). Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).  When considering a motion to dismiss that includes a statute of limitations defense, the Court may not generally consider matters outside the pleadings.  Id.

Here, as shown below, Plaintiff's claims are clearly time barred. Further, Plaintiff has failed to allege facts sufficient to justify this Court's invocation of the equitable tolling of the statute of limitations to Plaintiff's claims. Indeed, Plaintiff has failed to pursue his rights diligently and failed to allege extraordinary circumstances stood in the way and prevented the timely filing of his claims as against C4A. As such, C4A's motion should be granted in all respects, and Plaintiff's TAC should be dismissed with prejudice.

## ARGUMENT

## ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED

### A. Plaintiff's First Cause of Action Under 18 U.S.C.A. § 1591 and 1595 (West) is Time Barred

Plaintiff's First Cause of Action asserts a claim under 18 U.S.C.A. § 1591 and 1595 – the federal Trafficking Victims Protection Act ("TVPA"). *See Third Amended Complaint ("TAC")* ¶¶ 5-68. With respect to Plaintiff's federal claims, which provide the sole basis for the Court's subject-matter jurisdiction, a civil claim brought by an adult victim under the Trafficking Victims Protection Act, 18 U.S.C.A. § 1595 (West) (Count One) must be commenced within ten years after the cause of action arises.   See 18 U.S.C.A. § 1595(c)(l)-(2). Stated otherwise, the "statute of limitations for claims under the TVPA is ten years from the date the cause of action arises." Levin, 747 F. Supp. 3d at 669–70 (citing 18 U.S.C.A. § 1595(c)). Plaintiff alleges a single incident that purportedly took place in 2012. *See* TAC ¶¶ 16-31. Plaintiff, however, waited until February 2025 - more than twelve years after the alleged incident - to file this action, well past the statute of limitations for each of his claims. As such, any TVPA claim was time-barred by 2022.

Independently, and in the alternative, Plaintiff's TVPA claim against C4A fails on the merits because the TAC is devoid of any specific factual allegations sufficient to plausibly plead that C4A "recklessly disregarded" that Combs would use force, fraud, or coercion to obtain a commercial sex act from Plaintiff. See 18 U.S.C.A. § 1591(a)(2); Ashcroft, 556 U.S. at 678. Plaintiff's sole allegation against C4A on this point is that "Combs was able to develop a sexually violent criminal reputation among male companions within Cowboys4Angels." TAC ¶ 58. This is a naked, conclusory assertion - precisely the type of allegation that this Court is "not required to credit." AJ Energy LLC, 2019 WL 4688629, at *3. Plaintiff pleads no specific

facts identifying: (a) what specific complaints or red flags were ever communicated to C4A; (b) which, if any, C4A employees or agents had knowledge of Combs' alleged propensity for violence; or (c) any prior incident involving Combs and a C4A contractor that should have placed C4A on notice. Without such particularized factual allegations, the TAC does not nudge Plaintiff's TVPA claim against C4A from the merely conceivable to the plausible. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

To establish beneficiary liability under 18. U.S.C.A. § 1595(a), a plaintiff must allege and prove that "the defendant knew or should have known that the venture had violated Chapter 77" - and critically, "general awareness of sex trafficking is insufficient." S.J. v. Choice Hotels Int'l, Inc., 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (holding that "to conclude that franchisors . . . are liable under the TVPA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'"); Noble v. Weinstein, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("guilt, or liability, cannot be established by association alone"; plaintiff must allege "specific conduct by defendant that furthered the sex trafficking venture, and such conduct must have been undertaken with knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture"); Villalobos v. Telemundo Network Grp. LLC, No. 22 CIV. 7665 (JPC), 2025 WL 2687948, at *5 (S.D.N.Y. Sept. 19, 2025) (dismissing TVPRA claims where complaint alleged only a general "pattern and practice of sexist conduct" and indifference to past sexual misconduct, found to be "far short of suggesting that the Corporate Defendants should have been aware that sex trafficking was occurring"); Doe v. Bank of Am., N.A., 819 F. Supp. 3d 314 (S.D.N.Y. 2026)

(resolving knowledge standard, holding "should have known" means negligence under 1595(a), and dismissing claims against entity lacking sufficient nexus to specific trafficking venture). The TAC contains no allegation that C4A was ever informed of, or had any reason to suspect, that Combs would sexually assault Plaintiff. Plaintiff's conclusory assertion of a generalized "reputation" among unnamed contractors falls far short of the particularized factual allegations required under Twombly, Iqbal, and the controlling TVPRA beneficiary liability standard.

The TAC itself acknowledges that Plaintiff was instructed only that he was "not expected to perform sex acts or remove his clothing and was only contracted to attend dates with women" (TAC at par. 58) - an allegation that, if anything, undermines the claim that C4A recklessly disregarded any risk of sexual violence.

Moreover, the TAC itself is devoid of any specific factual allegation that Combs ever conveyed any threat or communicated any sexually violent propensity to C4A or its agents at any time prior to Plaintiff's engagement with Combs. Without such particularized factual allegations, the TAC does not nudge Plaintiff's TVPA claim against C4A from the merely conceivable to the plausible.

Accordingly, Plaintiff's TVPA claim against C4A must be dismissed on this independent ground as well.

**B. Plaintiff's Second Cause of Action Under the New York City Victims of Gender Motivated Protection Law is Time-Barred and Any Purported Revival is Preempted**

Plaintiff's second cause of action seeks to assert a claim under the New York City Victims of Gender Motivated Protection Law (the "VGMVL"). The statute of limitations under the VGMVL is seven years. *See* New York City, N.Y., Code § 10-1105. As with Plaintiff's other

claims, Plaintiff's VGMVL claim rests on a single encounter that allegedly occurred in 2012. Thus, any VGMVL claim was time-barred by 2019.

Plaintiff alleges in the TAC that the VGMVL, which originally provided a 2-year window (which opened on March 1, 2023 and closed on March 1, 2025) to file claims over gender motivated assaults that occurred at any time in the past, was amended effective January 29, 2026 extending the time to file claims to July 29, 2027. TAC ¶¶ 69-70.

Plaintiff's claim, however, is not saved by the amendments to the VGMVL which purport to revive expired VGMVL claims because that New York City local law is preempted by New York State law which provides a conflicting, "comprehensive and detailed regulatory scheme" under the New York Child Victims Act, N.Y. C.P.L.R. 214-g (McKinney) ("CVA"), and the Adult Survivors Act, N.Y. C.P.L.R. 214-j (McKinney) ("ASA") for the revival of previously time-barred sexual assault claims. See Parker v. Alexander, 779 F. Supp. 3d 361 (S.D.N.Y. 2025) (holding the Gender Motivated Violence Law ("GMVL")'s revival window is preempted by the CVA and ASA); Bellino v. Tallarico, No. 24-CV-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024), appeal withdrawn, No. 24-763, 2024 WL 3170987 (2d Cir. Apr. 4, 2024), at *1 (S.D.N.Y. Feb. 21, 2024) (same).

"Local laws may be ... preempted by state law either because the legislature has occupied the relevant field of regulation," i.e., field preemption, "or because the local law conflicts with state law," i.e., conflict preemption. Police Benevolent Ass'n of City of New York, Inc. v. City of New York, 40 N.Y.3d 417, 224 N.E.3d 522 (2023).

**(i)    The CVA and ASA Occupy the Field of Revival of Sexual Offense Claims**

Implicit field preemption occurs when the state legislature has "enacted a comprehensive and detailed regulatory scheme in a particular area." DJL Rest. Corp. v. City of

New York, 96 N.Y.2d 91, 95, 749 N.E.2d 186 (2001) (citation omitted).   Under such circumstances, the local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary." Id.  The State's intent to occupy a field may be implied "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area." Albany Area Builders Ass'n v. Town of Guilderland, 74 N.Y.2d 372, 377, 546 N.E.2d 920 (1989).

When the New York State Legislature adopted the CVA and ASA, it recognized the goal of providing victims of sexual offenses an opportunity to seek redress for claims that had expired; and it also recognized competing concerns about prosecuting stale claims, including the reliability of aged evidence, the due process rights of defendants, and the burden on the judiciary. Balancing those competing interests, the Legislature enacted  the CVA in 2019 and the ASA in 2022, allowing previously time-barred claims for sexual offenses to be prosecuted even though they had expired, but only for a limited  one-year window (extended an additional year for minors due to Covid).

The CVA revival window expired on August 14, 2021 for alleged offenses against minors and on November 23, 2023 for alleged offenses against adults. N.Y. C.P.L.R. 214-g (McKinney); 2019 N.Y. Sess. Laws ch. 11, §3, eff. Feb. 14, 2019 (amended 2020); 2020 N.Y. Sess. Laws, ch. 130, § 1, eff. Aug. 3, 2020; N.Y. C.P.L.R. 214-j (McKinney).

Through its enactment of the CVA in 2019 and the ASA in 2022, the New York State Legislature impliedly occupied the entire field of claim revival for sexual offense-related claims, including the claims alleged by Plaintiff.  The CVA and ASA constitute a comprehensive scheme:

they "apply to *all* civil claims by child and adult victims for personal injuries arising from conduct constituting sexual offenses;" and they each explicitly do so "notwithstanding" any limitations period "to the contrary." Parker, 779 F. Supp. 3d 361 (internal citations omitted); N.Y. C.P.L.R. 214-g, 214-j (McKinney) (emphasis added).  The CVA and ASA are "detailed"; they "provide exact time frames during which claims may be brought." Parker, 779 F. Supp. 3d 361.  Moreover, the timing of the ASA, which was passed four months *after* the GMVL Revival Provision was enacted, confirmed the legislature's intent to preempt local New York City law, as "the state easily could have carved the [GMVL] out of the ambit of the ASA" yet "opted not to do so." Id. at 3.

Considering these provisions, it has been held that the CVA and ASA evince legislative intent to occupy the entire "field of revival of civil claims arising from violations of state sexual offense penal statutes," like the VGMVL Revival Provision (the revival window provisions of the VGMVL). Id. at 2. Additional measures lend further support to the conclusion that the ASA and CVA constitute a "detailed and comprehensive" regulatory scheme.  For example, the New York State Legislature instructed the Chief Administrator of the courts to promulgate rules for adjudicating revived actions brought pursuant to the CVA and the ASA. N.Y. Judiciary Law § 219-d, 219-e (McKinney).

### (ii)    The VGMVL Revival Provision Conflicts with the CVA and ASA

"[C]onflict preemption occurs when a ... state law prohibits what a local law explicitly allows." Chwick v. Mulvey, 81 A.D.3d 161, 168, 915 N.Y.S.2d 578 (2010). The CVA and ASA revived previously time-barred VGMVL claims for a limited period, prohibiting such claims from being brought after August 13, 2021 (for claims by alleged child victims) or after November 23, 2023 (for claims by alleged adult victims). N.Y. C.P.L.R. 214-g, 214-j

- 19 -

(McKinney). The 2022 amendment to the VGMVL purported to permit the revival of all previously time-barred VGMVL claims through February 28, 2025 (N.Y.C. Admin. § 10-1105(a)), that is, almost a year and a half longer than the state law deadline for adults, and more than three and half years longer than the state law deadline for minors. Likewise, the January 29, 2026 amendment purports to permit the revival of all previously time-barred VGMVL claims to July 29, 2027 ( TAC ¶¶ 69-70) that is, almost four years longer than the state law deadline for adults, and more than seven years longer than the state law deadline for minors.

Thus, on its face, the VGMVL's Revival Provision conflicts with the revival windows of the CVA and the ASA, which are supposed to control "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." (N.Y. C.P.L.R. 214-g, 214-j (McKinney)).

Importantly, the above preemption question presented in this Motion was before the Second Circuit in Parker, 171 F.4th 146, certified question accepted, Parker v. Alexander, 45 N.Y.3d 951, 278 N.E.3d 441 (2026), certified question accepted, Parker v. Alexander, 45 N.Y.3d 951, 278 N.E.3d 441 (2026) (2d Cir. Mar. 23, 2026). That appeal raised the exact same question of New York law; whether two New York State laws, the Child Victims Act (CVA), N.Y. C.P.L.R. 214-g (McKinney), and the Adult Survivors Act (ASA), N.Y. C.P.L.R. 214-j (McKinney), preempt the VGMVL, New York City, N.Y., Code § 10-1105. District Courts in this Circuit have come to conflicting resolutions as to whether the VGMVL window is preempted by the claim-revival provisions in the State's CVA and ASA. As no New York Court has addressed this question, and because the Parker appeal raised issues of importance to New York, including home rule authority under the New York State Constitution, the Second Circuit deferred its preemption question

decision in order to certify to the New York Court of Appeals whether any revival window established by New York City's VGMVL permits victims of sexual and gender-based violence to pursue civil claims was preempted by the earlier revival periods set forth in New York State's CVA and ASA.

Based on the above, if this Court is not inclined to grant dismissal to C4A, in the alternative, it is respectfully submitted that staying the within action pending the determination of the above issue by the New York Court of Appeals would be an appropriate conservation of judicial resources. *See* Tutor v. Alexander, 2026 U.S. Dist. Lexis 76418 (S.D.N.Y. 2026) (Court ordered that, in the interest of efficiency and to avoid potentially unnecessary or duplicative proceedings, the motion to stay was granted and the action was stayed pending a decision by the New York Court of Appeals or the Second Circuit bearing on the certified question raised in Parker, 171 F.4th 146.) Accordingly, in the alternative, and without waiver of the foregoing dismissal arguments, Cowboys4Angels respectfully requests that this Court stay the within action pending the New York Court of Appeals' resolution of the certified question.

## C. Plaintiff's Third Cause of Action Alleging Intentional Infliction of Emotional Distress is Time Barred

A cause of action alleging intentional infliction of emotional distress is governed by a one-year statute of limitations. Teller v. Galak, 162 A.D.3d 959, 80 N.Y.S.3d 106 (2018). *See* N.Y. C.P.L.R. 215 [3] (McKinney); Khan v. Reade, 7 A.D.3d 311, 312, 776 N.Y.S.2d 281 (2004)). Under the facts of this case, the cause of action accrued at the time of the assault in 2012. Since the instant action was commenced in 2025, the cause of action alleging intentional infliction of emotional distress is time-barred. Stated otherwise, since the claim accrued on the date of the alleged incident (i.e., 2012), Plaintiff's intentional tort claims expired

in 2013.

### D. Plaintiff's Fourth Cause of Action Under the Racketeer Influenced Corrupt Organizations ("RICO") Act is Time-Barred

Plaintiff's Fourth Cause of Action is a claim under RICO, *see* TAC ¶¶ 86-97, which has a statute of limitations of four years. Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012). A civil RICO action must be commenced within four years of the alleged injury or, "in the case of an unknown injury, within four years of the triggering of a plaintiff's duty to inquire."  See e.g., Rivers v. Combs, No. 25-CV-1726 (JSR), 2025 WL 2414117, at *4 (S.D.N.Y. Aug. 19, 2025), appeal dismissed (Oct. 22, 2025), appeal dismissed (Oct. 22, 2025); McKenzie v. Artists Rts. Soc'y, Inc., 757 F. Supp. 3d 427, 442–43 (S.D.N.Y. 2024). The four-year statute of limitations begins to run when a Plaintiff sustains his alleged injury or, if such injury was not known at that time, then from such date on which there were "sufficient 'storm warnings' to trigger the duty to inquire." McKenzie, 757 F. Supp. 3d at 442–43 (quotation marks and citation omitted).  Plaintiff became aware of his injury as of 2012; thus, the RICO claim expired in 2016.

As a threshold matter, the entire predicate for Plaintiff's RICO claim against C4A has been substantially undermined: on July 25, 2026, a jury acquitted former Defendant Sean Combs of RICO and sex trafficking charges - the very charges upon which Plaintiff's RICO claim against C4A is premised. See USA v. Combs, 24-CR-00542 (AS) (S.D.N.Y. 2024). While a criminal acquittal does not foreclose civil liability, a civil RICO claim requires, as a foundational element, a "pattern of racketeering activity" consisting of predicate acts. 18 U.S.C.A. § 1961(5) (West).

Where the criminal conduct alleged to constitute those predicate acts has been the subject of a jury acquittal, the plausibility of a civil RICO claim predicated on the same conduct is significantly diminished. There is no allegation - let alone a proven one - that C4A was involved in

any such enterprise in any event. The TAC itself contains no specific allegations identifying C4A as a participant in any racketeering enterprise; indeed, Plaintiff concedes he "did not learn of this racketeering activity . . . until the criminal trial began." TAC 48. The RICO claim against C4A must be dismissed on this basis alone.

Moreover, and independently, Plaintiff's own allegations in the TAC affirmatively defeat his RICO claim. Plaintiff alleges that he "did not learn of this racketeering activity . . . until the criminal trial began and witnesses testified." TAC ¶ 48. The criminal trial of Combs, however, commenced after Plaintiff filed the instant Complaint in February 2025. Elsewhere in the TAC, Plaintiff states that he only learned of the criminal enterprise "with the filing of the criminal indictment against Combs on or about September 2024." TAC 94. Put plainly, Plaintiff has affirmatively alleged on two separate occasions that he did not possess the requisite knowledge of a RICO enterprise at the time he filed suit.

A civil RICO cause of action accrues, and the four-year statute of limitations begins to run, when the plaintiff knew or should have known of his injury - not when the plaintiff learned the full extent of an alleged RICO enterprise. Here, Plaintiff's own allegations confirm he was aware of his alleged injury in 2012. Accordingly, Plaintiff's RICO claim expired no later than 2016, regardless of when Plaintiff may have learned about the alleged enterprise's inner workings. Koch, 699 F.3d at 148; Rotella v. Wood, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) ("discovery of the injury, not discovery of the other elements of a claim, is what starts the clock"); In re Merrill Lynch Ltd. Partnerships Litig., 154 F.3d 56, 60 (2d Cir. 1998) (adopting injury discovery rule for civil RICO). Here, Plaintiff's own allegations confirm he was aware of his alleged injury in 2012.

Accordingly, Plaintiff's RICO claim expired no later than 2016, regardless of when Plaintiff

may have learned about the alleged enterprise's inner workings. Dismissal at the pleading stage is proper "where the facts needed for determination of when a reasonable plaintiff of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint." McNeil-Coward v. Palterovich, 416 F. Supp. 3d 236, 243 (E.D.N.Y. 2018) (quoting Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 362 (2d Cir. 2013)) (affirming dismissal where complaint left "little to no doubt" that inquiry notice had been triggered more than four years before filing). The allegations in the TAC leave no doubt that Plaintiff sustained his alleged injury in 2012, triggering the RICO limitations clock at that time.

First, there is no allegation that the criminal charges included allegations involving C4A at all, and, in any event, former defendant Combs was acquitted of all RICO and trafficking charges. See USA v. Combs, 24-CR-00542 (AS), ECF DOC. NO. No. 447 (S.D.N.Y. 2024).  Second, even if those discredited allegations involved C4A, it does not matter when Plaintiff learns the innerworkings of an alleged RICO enterprise, what matters is when Plaintiff discovered his alleged injury, which Plaintiff alleges was in 2012.  See McKenzie, 757 F. Supp. 3d at 443  ("[K]nowledge of facts that would suggest to a reasonably intelligent person the probability that the person has been injured is dispositive, even where the extent of the RICO scheme is not discovered until a later date.") (quotation marks and citation omitted); Rivers v. Combs, 2025 U.S. Dist. Lexis 161235 (S.D.N.Y. 2025) (A civil claim under RICO must be brought within four years of the alleged injury or, in the case of an unknown injury, within four years of the triggering of a plaintiff's "duty to inquire."); Broccoli v. Achworth, 2025 U.S. Distr. Lexis 54305 (S.D.N.Y. 2025) ("the four-year statute of limitations is activated when [a] plaintiff is placed on 'inquiry notice' of the injury - that is, when [a] plaintiff has encountered 'sufficient "storm warnings" to trigger a duty to

inquire.'"); Verschleiser v. Frydman, No. 22-CV-7909, 2023 U.S. Dist. LEXIS 158963, 2023 WL 5835031, at *5 (S.D.N.Y. Sept. 7, 2023); Fire & Police Pension Ass'n of Colorado v. Bank of Montreal, 368 F. Supp. 3d 681, 708 (S.D.N.Y. 2019) ("Such storm warnings need not detail every aspect of the alleged fraudulent scheme. Rather, such storm warnings are sufficient where, a person of ordinary intelligence would consider it probable that fraud had occurred.") ; In re Merrill, Bofa, & Morgan Stanley Spoofing Litig., No. 19-CV-6002 (LJL), 2021 WL 827190, at *6 (S.D.N.Y. Mar. 4, 2021), aff'd sub nom. Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc., 41 F.4th 71 (2d Cir. 2022) ("Inquiry notice gives rise to a duty of inquiry when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." (alteration adopted) (internal quotation marks and citation omitted)), aff'd sub nom.

### E. Plaintiff's Fifth Cause of Action Alleging a Claim Under The New York State Trafficking Victims Protection and Justice Is Untimely

Plaintiff's Fifth Cause of Action asserts a claim for labor and sex trafficking under the N.Y. Soc. Serv. Law § 483-bb(c) (McKinney). This claim must be dismissed because, among other things, at the time of the events in question, no cause of action under 483-bb(c) existed and the statute is not retroactive. The "provision in § 483-bb that establishes a civil right of action only became effective on January 19, 2016." S.J. v. Choice Hotels Int'l, Inc., 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020). As stated by the Court in S.J.:

> It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577, 584, 696 N.E.2d 978 (1998) (citing cases). Furthermore, although "[a]n equally settled maxim is that 'remedial' legislation . . . should be applied retroactively, . . . [c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law." Id. (citations omitted). In any

event, this "remedial" exception "does not apply to statutes creating new rights and remedies where none previously existed," as is the case here. Matter of Cady v. Broome Cnty., 87 A.D.2d 964, 965, 451 N.Y.S.2d 206, 207 (1982) (citing Jacobus v. Colgate, 217 N.Y. 235, 252, 111 N.E. 837 (1916) (Cardozo, J.)).

That the right of action created in 2016 is a *new* right vis-à-vis Defendants - like C4A - is made evident by reference to then-Judge Cardozo's discussion in Jacobus, 217 N.Y. 235, cited above. There, he explained that:

> "[t]here is a manifest and important difference between a statute which creates a new statutory right and a statute which prescribes a 'cause of action,' or remedy for an existing right. For example, a statute such as Lord Campbell's Act *which gave to the widow and next of kin of a person killed by the wrongful act of another the right to recover damages from the wrongdoer, conferred a right which did not exist at common law and it also prescribed a remedy by which that right might be enforced.* The present statute is different. Before this statute was passed our law, in common with the law of every civilized state, recognized that a trespass upon the real property of the owner and burning down the buildings thereon in whatever jurisdiction the property was situated constituted a wrong and that such a wrongful act violated the *right* of the owner and that the owner had a *right* to redress."

In sum, retroactive application of statutes is disfavored "by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." Id. See also Gleason v. Gleason, 26 N.Y.2d 28, 36, 256 N.E.2d 513 (1970) ("[i]t takes a clear expression of the legislative purpose ... to justify a retroactive application"). As the court in S.J., 473 F. Supp. 3d 147 held, no such language exists with respect to Section 483bb(c). The alleged conduct underlying Plaintiffs' § 483-bb(c) claim took place in 2012, four years before January 19, 2016. Accordingly, Plaintiff's claim under N.Y. Soc. Serv. Law § 483-bb(c) must be dismissed. See S.J., 473 F. Supp. 3d at 156 (dismissing plaintiff's N.Y. Soc. Serv. Law § 483-bb(c) claim and holding that it "necessarily fails" where the alleged sex trafficking occurred "more than six years prior to January 19, 2016").

### F. No Tolling Doctrine Applies to Save the Time-Barred Claims

As Cowboys4Angels has shown that each of Plaintiff's causes of action are time-barred, it is Plaintiff's burden to establish that the limitations period should be tolled. Overall v. Est. of Klotz, 52 F.3d 398, 403 (2d Cir. 1995). Reading the TAC in the light most favorable to Plaintiff, the pleading fails to sufficiently allege a basis for the Court to invoke equitable tolling under New York and/or federal law--duress tolling and equitable estoppel. Specifically, Plaintiff has failed to establish that he has been pursuing his rights diligently and that some extraordinary circumstances stood in his way and prevented his timely filing as against C4A. Plaintiff has failed to satisfy his burden of plausibly alleging that he falls within any exception to the applicable statute of limitations, as neither tolling doctrine operates to toll Plaintiff's stale claims.

### (i)    Equitable Tolling \

Where a claim is otherwise time-barred, a District Court's equitable powers allow it "to extend a statute of limitations on a case-by-case basis to prevent inequity." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). This is known as the doctrine of equitable tolling. "Federal law governs the tolling of federal claims," Russo v. Mason-McDuffie Inv. Co. Inc., 927 F.2d 610 (9th Cir. 1991), and "Congress is presumed to incorporate equitable tolling into federal statutes of limitation." Saint-Jean v. Emigrant Mortg. Co., 129 F.4th 124, 144 (2d Cir. 2025), cert. denied, 223 L. Ed. 2d 507 (Jan. 12, 2026).

A district court's power to invoke equitable tolling, however, is circumscribed. See Doe v. United States, 76 F.4th 64, 71 (2d Cir. 2023). To toll the statute of limitations for a federal claim, a plaintiff must establish "(l) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian

Tribe of Wisconsin v. United States, 577 U.S. 250, 255, 136 S. Ct. 750, 193 L. Ed. 2d 652 (2016). "The law prohibits a judge from exercising her discretion where these two elements are missing." Doe, 76 F.4th at 71.

Accordingly, in asking the Court to equitably toll a limitations period, a plaintiff bears the burden to "plausibly alleg[e] that [he] fall[s] within an exception to the applicable statute of limitations." Levin, 747 F. Supp. 3d at 671–72 (internal citations omitted). At the pleading stage, a plaintiff need only allege facts that plausibly suggest equitable tolling can be invoked. See Franck v. New York Health Care, Inc., No. 21CV4955GHWJLC, 2022 WL 4363855, at *10–12 (S.D.N.Y. Sept. 21, 2022), report and recommendation adopted, No. 1:21-CV-4955-GHW, 2023 WL 2474559 (S.D.N.Y. Mar. 11, 2023). If, however, a plaintiff fails to plead specific factual allegations indicating that he pursued his rights diligently and was frustrated by extraordinary circumstances, a district court may reject a claim of equitable tolling and dismiss claims as time barred. See Id. at 11; see also Lomako v. New York Inst. of Tech., 440 F. App'x 1, 3 (2d Cir. 2011) (summary order) (rejecting equitable tolling where underlying complaint "lacked any factual allegations" other than "vague and conclusory" assertions that did "not suggest a plausible basis for equitable tolling.").

### (ii)    Duress Tolling

Certain courts have recognized a related species of tolling known as "duress tolling." Duress tolling requires a plaintiff to allege (1) "'threats or force by the defendant,'" and (2) "'the submission of the plaintiff's free will to those threats.'" Gilmore v. Combs, No. 24-CV-8440 (JPO), 2025 WL 1425326, at *4 (S.D.N.Y. May 16, 2025), appeal dismissed (July 29, 2025), motion for relief from judgment denied, No. 24-CV-8440 (JPO), 2025 WL 1548860 (S.D.N.Y. May 30, 2025) (quoting Overall, 52 F.3d at 404). Critically, the threats or force must be "continuous" to warrant

duress tolling.  Id.; see also Funk v. Belneftekhim, No. 14-CV-0376 (BMC), 2019 WL 3035124, at *3 (E.D.N.Y. July 11, 2019) ("Duress as a basis for tolling applies only when defendants' conduct constitutes a continuation of the underlying [duress] tort...").

Although New York and federal courts recognize "duress" tolling as a potential basis for equitable tolling, the vague allegations in the TAC do not amount to duress under New York law. Under New York law, duress must be "an element of the cause of action alleged" and requires "both threats or force by the defendant, and the submission of the plaintiff's free will to those threats. Both elements must continue in order for a duress-based tort to persist as a 'continuous wrong.'" Overall, 52 F.3d at 404.  Duress cannot be invoked based on discrete instances of the defendant's conduct but instead requires "a course of conduct involving threats or force that continued without interruption" from the time of the alleged incident until the time the action was brought. Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019), see Gilmore, 2025 WL 1425326 (dismissing action as time-barred and rejecting Plaintiff's contention that alleged threats by defendant at the time of an alleged assault tolled the limitations period).

Plaintiff fails to establish either element.  Plaintiff's theory as to why he could not pursue his claims has not changed between the Second and Third Amended complaints. He has alleged in both Complaints that he was in fear of Combs' threats which prevented him from seeking legal recourse until Combs was in jail and his indictment was announced.

As stated above, in a futile attempt at resurrecting his time barred claims and curing the clear deficiencies in the Second Amended Complaint, Plaintiff has, in essence, merely added a time frame/date as to when Combs allegedly contacted defendant James and threatened Plaintiff (i.e., now alleged to have occurred in 2014) and added more context to those events. Specifically,

as to events and communications between the parties (and former defendant Combs) that took place post the alleged assault, Plaintiff has alleged for the first time in the Third Amended Complaint that:

a. Approximately two years after the assault, after Plaintiff posted a comment on Comb's Instagram, Combs contacted Defendant Taylor and conveyed renewed warnings about Plaintiff. TAC 6, 32, 33, and 34; and

b. The 2014 purported threat by Combs was relayed by Taylor to Plaintiff (Id. at 9, 33, 34) and that "another Cowboys4Angels contractor besides Taylor ("Jamie a/k/a/ Tommy") separately warned Otis that Combs had repeatedly called James and threaten[ed] Otis' life." Id. at para. 7, 36 and 37. Based upon the alleged multiple renewed threats communicated through third parties, Plaintiff alleges that his fears were cemented which prevented him from pursuing his legal remedies (Id. at para. 7 and 8) until Combs was in custody and his indictment was released (Id. at para. 43 and 44).

First, the threats alleged by Plaintiff do not emanate from C4A but from former Defendant Combs. On this basis alone, any claim of equitable tolling of the statute of limitations as against C4A should be rejected. There are simply no allegations by Plaintiff in the TAC that C4A took any action which could in any way be construed as causing Plaintiff to refrain from pursuing his legal rights. Indeed, there were no allegations that there were efforts by Cowboys4Angels to threaten or retaliate against Plaintiff if he filed a claim against it.

Second, even if Combs' alleged threats could somehow be imputed to C4A, which they cannot, Plaintiff still fails to establish (even with the minor amendments or added allegations

contained in the Third Amended Complaint) a continuous wrong because he alleges only two distinct threats occurring subsequent to the alleged injury. To meet his burden, however, he must allege continuing duress such as would toll the limitations period. Zoe G. v. Frederick F.G., 208 A.D.2d 675, 617 N.Y.S.2d 370 (1994). The time period between the second alleged threat (i.e., 2014) and the time in which he filed his Complaint (2025) was approximately eleven (11) years.

### (iii)    Equitable Estoppel

As stated above, the crux of Plaintiff's allegations as to why he waited to file the instant lawsuit are that he was in fear of Combs due to threats, on two different occasions, and those threats prevented Plaintiff from seeking any legal recourse until Combs was indicted and jailed. Plaintiff alleges two time periods in which he was threatened by Combs (2012 after the assault and again in 2014). The Court must therefore consider whether these threats created an "extraordinary circumstance" that "stood in [Plaintiff's] way of commencing [the] case" prior to the expiration of the limitations period. See Doe, 76 F.4th at 71–72.

"Among the extraordinary reasons that may justify equitable tolling of a statute of limitations is a defendant's efforts to threaten or retaliate against a plaintiff if [he] files a claim against him." Id. at 72 (internal citations omitted). Courts sometimes label this theory of tolling as so-called "retaliation tolling." Gilmore, 2025 WL 1425326, at *3. Specifically, in the prison context, courts have suggested that retaliation tolling may be appropriate where a plaintiff alleges "specific facts showing that a reasonable fear of retaliation by [his or her] jailers prevented them from filing a timely complaint." Doe, 76 F.4th at 71–72 (internal quotations and citations omitted).

Under New York law, equitable estoppel applies "when a defendant wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." Roeder v. J.P. Morgan Chase & Co., 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), aff'd, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022). It is an "extraordinary remedy" to be "invoked sparingly and only under exceptional circumstances" where the defendant's affirmative misconduct caused the delay between the accrual and the filing of plaintiff's claim. Id (internal quotations omitted). Equitable estoppel is "strikingly similar to the federal principle" of equitable tolling, which governs Plaintiff's federal claims. See Diaz v. City Univ. of New York, No. 15CV1319PACMHD, 2015 WL 13746673, at *6 (S.D.N.Y. Nov. 16, 2015), report and recommendation adopted, No. 15CIV1319PACMHD, 2016 WL 958684 (S.D.N.Y. Mar. 8, 2016).

A plaintiff who invokes equitable estoppel must allege not only affirmative wrongdoing by the defendant that prevented filing, but also "due diligence" in bringing the plaintiff's action when the defendant's alleged wrongdoing "cease[d] to be operational." Id. (internal quotations omitted); see Simcuski v. Saeli, 44 N.Y.2d 442, 449–50, 377 N.E.2d 713 (1978) (holding "the burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational."). As with duress, Plaintiff must establish that "specific actions by defendants" subsequent to the tortious conduct for which Plaintiff sues "somehow kept [plaintiff] from timely bringing suit." Geiss, 383 F. Supp. 3d at 172 (internal quotation omitted). Further, defendant's subsequent actions must "entail affirmative steps to prevent a plaintiff from bringing a claim." Id. (internal quotation omitted).

Without minimizing the seriousness of Combs' alleged threats against Plaintiff, Plaintiff has still not established "the submission of [his] free will to those threats" for more than a decade after the alleged threat. See Overall, 52 F.3d at 404. In other cases where plaintiffs brought claims like those at issue here, the Second Circuit made clear that a plaintiff's ongoing fear and emotional distress from abuse that has ended does not constitute "duress" for tolling. See Id. at 405–06. General psychological stress based solely on the original alleged incident in the Third Amended Complaint does not establish duress. See Adams v. Jenkins, No. 115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005) ("There is no basis for equitably tolling the running of the statute based on general claims of psychological stress, even when allegedly caused by defendant[.]").

In sum, Plaintiff cannot allege that he had any reasonable fear of retaliation by C4A. No threat alleged in the TAC emanated from C4A - the threats all emanated from Combs. Plaintiff cannot allege the requisite "reasonable fear of retaliation" to warrant tolling. See Doe, 76 F.4th at 72; Gilmore, 2025 WL 1425326, at *3. Further, the purported threats by Combs (which cannot be attributed to C4A) are too attenuated from the instant suit to support any form of equitable tolling. As stated above, it was approximately eleven (11) years after the second alleged threat that Plaintiff filed the within action.

Plaintiff alleges no facts to support any claim that C4A (or even Combs) wielded "substantial control" over Plaintiff in the more than a decade between the alleged assault and Plaintiff's filing of this action, or even in the more than a decade between the alleged threats by Combs and the filing of this action.

The above allegations as to C4A (and even Combs) do not create an extraordinary

circumstance that stood in Plaintiff's way of commencing his claims as against C4A prior to the expiration of the applicable limitations period for each of Plaintiff's claims.

Further, the TAC's newly added allegations regarding the 2018 death of Kim Porter and a 2025 documentary produced by Curtis "50 Cent" Jackson are legally irrelevant to any tolling theory as against C4A and must be disregarded. See TAC ¶¶ 41-42. Plaintiff alleges that online speculation about Combs' possible involvement in Porter's death "scared Otis to the core" and "reaffirmed his decision not to sue," and that the 50 Cent documentary further reinforced his "worst fears about Sean Combs." Id. These allegations share a fatal and common defect: they concern only Plaintiff's subjective fear of former defendant Combs — not any conduct, threat, or coercive act by Cowboys4Angels. As this Court has consistently held, general psychological fear based on the original alleged incident, or on public media coverage of a third party, does not constitute an "extraordinary circumstance" that prevented Plaintiff from timely filing his claims. See Adams v. Jenkins, No. 115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005).

C4A was not involved in Kim Porter's death, had no involvement in the 50 Cent documentary, and had no involvement in the public media coverage that allegedly reinforced Plaintiff's fears. These allegations cannot, as a matter of law, be attributed to C4A for purposes of any tolling doctrine, and they add nothing to Plaintiff's already insufficient equitable tolling theory as against this Defendant.

In sum, Plaintiff does not and cannot point to any act, affirmative or otherwise, by C4A that prevented Plaintiff from filing suit. As this court explained recently in Gilmore, 2025 WL 1425326, only one court in this District has "recognized the fear of retaliation as a basis for equitable tolling"

and "that holding was based upon the reasoning that correction officers exert 'substantial control' over an inmate's daily life and so 'the specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control." Gilmore, 2025 WL 1425326, at *4._ Plaintiff does not allege in the TAC that he has had any communication with Cowboys4Angels (or Combs) since 2014 - and extrinsic evidence submitted herewith demonstrates that Plaintiff's last contact with C4A was in 2016, when he voluntarily forwarded a referral and accepted a referral fee, conduct wholly inconsistent with duress. See generally TAC.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that Cowboys4Angels is entitled to an Order dismissing Plaintiff's Third Amended Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: Huntington, New York
June 1, 2026

Respectfully submitted,

LAW OFFICES OF THOMAS A. BIZZARO, JR., P.C.

By:
Thomas A. Bizzaro, Jr., Esq.
Attorneys for Defendant
Cowboys4Angels
23 Green Street, Suite 309
Huntington, New York 11743
(631) 380-3297
tbizzaro@tab-law.com

- 35 -