

July 7, 2026

**VIA ECF**
Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:** **Otis v. Cowboys4Angels and Garren James a/k/a Brett Taylor**
> **Case No.: 25-cv-01652 (LAP)**

Dear Honorable Judge Preska:

This office represents defendant Brett Taylor, incorrectly sued herein as Garren James ("Taylor" or "Defendant"), in the above-referenced action. This correspondence responds to plaintiff Steve Otis's ("Otis" or "Plaintiff") July 2, 2026 letter motion seeking to quash the subpoena and deposition notice served upon non-party witness, Dr. Javier Perez ("Dr. Perez"), dated July 1, 2026 (ECF No. 140) (the "Subpoena"). For the reasons set forth below, the motion should be denied. At a minimum, Defendant should be permitted to obtain the complete medical file that Plaintiff himself authorized months ago - thereby waiving any claim of privilege over those records - together with Plaintiff's complete pharmacy records from Walgreens and all other pharmacies at which Plaintiff has filled prescriptions - both of which go to the very heart of the causation and damages issues that will be tried at the upcoming inquest.

Simply put, discovery conducted to date reveals the following indisputable facts:

1. Otis did not treat with any other healthcare provider other than Dr. Perez – a primary care physician – for the psychological and emotional injuries Plaintiff alleges he suffers from as a result of a sexual assault at the hands of "now-dismissed" defendant Sean Combs ("Combs");
2. Otis never informed Dr. Perez of the alleged assault or the alleged trauma causing his symptoms;
3. Dr. Perez diagnosed Otis with: (a) anxiety disorder, (b) panic attacks, and (c) night terrors – from an unknown traumatic event (the "Diagnosis");
4. Otis failed to follow Dr. Perez's medical advice and opinion to seek a psychiatric evaluation – which Dr. Perez consistently recommended from as early as December 2010/January 2011 to the present day (the "Treatment Plan");
5. Dr. Perez has been prescribing 4 mg of Xanax a day since December 2010/January 2011 – despite the fact that Otis still has not discussed the alleged assault with Dr. Perez

(despite the pendency of this public lawsuit) – and despite the fact that Otis has failed to follow the Treatment Plan;

6. Dr. Perez wrote a couple prescriptions for Valium to Otis for a short period of time after 2011;

7. Otis has been treating with Dr. Perez since at least 2005;

8. Dr. Perez prescribed Xanax to Otis – 2 mg a day - in October 2005 and November 2006;

9. Upon information and belief, the sparse blood test results in Dr. Perez's chart do not indicate that Otis is taking 4 mg of Xanax a day since 2011; and

10. The medical records produced to Defendant's counsel by Otis (obtained by Plaintiff's counsel directly from Dr. Perez, as per Mr. Hommel's representation, which is not contested) does not contain any narrative reports or treatment records earlier than December 2010/January 2011 – despite counsel providing an authorization to Defendant's counsel for Dr. Perez's "complete medical file" - so it is impossible for Taylor to determine if Otis has been prescribed Xanax from 2005 (or earlier) to the present day and/or whether Dr. Perez had the same Diagnosis when he was prescribing 2 mg of Xanax back in 2005 – at least seven (7) years prior to the alleged assault.

Because Otis cannot escape these indisputable facts, he seeks refuge in a purely procedural objection - arguing that the Dr. Perez Subpoena is "untimely." That argument is little more than a smokescreen designed solely to divert the Court's attention from the serious and unresolved questions concerning Plaintiff's alleged damages, the true cause of his claimed psychological injuries, and his course of treatment both before and after the alleged assault. As explained below, the Subpoena is timely under the governing standard, the need for it arose only after defense counsel, while preparing for the deposition of Taylor, first appreciated the significance of the November 2005 Alprazolam prescription in Plaintiff's production, and the information sought is indispensable to the damages inquest that Plaintiff insists is imminent.

Plaintiff takes issue with the Dr. Perez Subpoena because the deadline for written discovery requests was May 30, 2026 and the deposition deadline was June 30, 2026 (ECF No. 122). But that objection ignores when, and how, the need for this discovery arose. Plaintiff deposed Defendant Taylor on June 30, 2026-the very last day of the deposition period - and Plaintiff's own deposition, originally scheduled for July 6, 2026, remains outstanding and is now set for July 23, 2026. While preparing to defend Taylor's deposition that undersigned counsel, reviewing the produced records in the context of the deposition testimony and the full discovery record, the undersigned first appreciated the significance of the November 2005 Walgreens Alprazolam prescription among the pharmacy records Plaintiff had produced. As stated above, Plaintiff was prescribed by Dr. Perez Alprazolam (the generic form of Xanax) - a potent, fast-acting benzodiazepine generally prescribed to treat generalized anxiety and/or panic disorders – in 2005 – seven (7) years prior to the alleged assault by Combs. While the prescribing of this drug -in and of itself - might appear consistent with the psychological or emotional injuries Plaintiff attributes to the assault alleged in his Third Amended Complaint, the earliest prescription reflected in the produced records is dated

November 10, 2005 -approximately seven (7) years before the alleged assault – and Perez's medical chart is utterly devoid of any narrative report or other healthcare record explaining the reason for prescribing Alprazolam (a Schedule IV controlled substance) to Otis back in 2005. *A copy of the Walgreens' prescription/pharmacy record is annexed hereto as Exhibit "A."* Defendant could not have sought this discovery earlier because counsel first noticed the 2005 pharmacy record while preparing for defendant Taylor's deposition.

The medical records produced by Plaintiff further demonstrate that Dr. Perez never identified any purported traumatic event or incident as the cause of the need to prescribe Alprazolam to Plaintiff - either after the alleged 2012 assault (or as far back as November 2005) - because Otis never told Dr. Perez about the alleged assault. In addition, evidence in the record raises serious questions about whether Plaintiff took the Alprazolam prescribed to him as directed over the past twenty (20) years.

Indeed, at the July 7, 2026 deposition of Bryan Alzate - a deposition that Defendant did not oppose despite it occurring after the June 30, 2026 deposition deadline - Mr. Alzate testified under oath that Plaintiff has sold controlled substances and other drugs, including marijuana, ecstasy, and "party poppers". A copy of the relevant transcript excerpts will be provided to the Court as a supplemental submission promptly upon receipt from the court reporter, which has been ordered on an expedited basis. *See also Exhibit "B" annexed hereto – a  February 18, 1997 decision of the United States Court of Appeals for the Eleventh Circuit, which discusses, among other things, Plaintiff's guilty plea to conspiring to possess marijuana with the intent to distribute.* These facts bear directly on both the cause and the existence of Plaintiff's claimed damages, and on his credibility.

Plaintiff's reliance on <u>Dodson v. CBS Broad., Inc.</u>, No. 02 CIV. 9270(KMW)(AJ, 2005 WL 3177723 (S.D.N.Y. Nov. 29, 2005), and <u>Pasternak v. Dow Kim</u>, No. 10 CIV. 5045 LTS JLC, 2013 WL 1729564 (S.D.N.Y. Apr. 22, 2013), is misplaced. Those cases stand for the unremarkable proposition that a party may not use a Rule 45 subpoena to circumvent discovery deadlines and belatedly pursue discovery it could and should have sought earlier. These cases are easily distinguishable. Where, as here, the need for further discovery arises from newly produced or newly appreciated evidence, courts in this District routinely permit limited post-deadline discovery upon a showing of good cause and diligence. See Fed. R. Civ. P. 16(b)(4); see also Fed. R. Civ. P. 45(d)(3) (a motion to quash requires a showing of undue burden, privilege, or other protected interest - none of which Plaintiff has established here). Defendant plainly satisfies that standard: the November 2005 alprazolam prescription - which predates the alleged assault by roughly seven years and directly undermines Plaintiff's causation theory - was first appreciated by Defendant's counsel during preparation for the June 30, 2026 deposition of Taylor. Defendant moved promptly, filing the Dr. Perez Subpoena on July 1, 2026.

Independent of Defendant's diligence, Plaintiff's objection fails for the additional reason that the so-ordered schedule (ECF No. 122) was negotiated to govern ordinary pretrial discovery; it does not purport to govern Fed. R. Civ. P. 45 document subpoenas issued in connection with the damages inquest that this Court had set for August 31 and September 1, 2026 (ECF No. 123). Courts in this District recognize that inquest-related discovery occupies a procedural posture distinct from ordinary pretrial discovery. In all events, the Dr. Perez Subpoena was filed on July 1, 2026 - a single day after the June 30th deposition deadline - and the inquest remains nearly two months away (if not longer based on the Court's recent order), leaving ample time to obtain and review the records without disrupting the inquest or prejudicing Plaintiff. Plaintiff identifies no actual prejudice, and none exists.

Even if the Court were to view the Subpoena as technically late - quashing would be an unduly harsh remedy where the discovery sought bears directly on the measure of Plaintiff's damages. Courts in this District routinely fashion tailored remedies - such as a brief extension or an expedited production schedule - rather than excluding evidence material to a damages determination. Any conceivable burden to Plaintiff here can be addressed by a modest adjustment to the schedule, not by depriving the Court of a complete record on causation and damages.

Based on the foregoing, Defendant Taylor served the Subpoena upon Dr. Perez to obtain the complete copy of Plaintiff's medical records in his possession or control - the very file Plaintiff authorized Defendant's counsel to obtain, but which Plaintiff produced only in incomplete form, omitting all narrative reports and treatment records earlier than December 2010/January 2011. Defendant also intends to serve subpoenas for Plaintiff's pharmacy records from Walgreens and all other pharmacies at which Plaintiff has filled prescriptions and respectfully requests leave to do so. Notably, Defendant does not presently need to depose Dr. Perez and is prepared to withdraw the deposition notice if he is permitted to obtain the complete medical file in Dr. Perez's possession and Plaintiff's complete pharmacy records - subject to the right to seek leave of Court to depose Dr. Perez should the complete records raise additional questions material to the damages inquest.

Far from prejudicing the damages inquest that the Court had scheduled for August 31 and September 1, 2026, this document discovery will ensure that the inquest proceeds on a complete and accurate record concerning the cause, onset, and treatment of Plaintiff's claimed injuries. Given the psychological and emotional injuries Plaintiff alleges, and the startling discrepancy between the date of the alleged assault (sometime in 2012) and the earliest alprazolam prescription reflected in the records (as far back as November 2005), Defendant Taylor is plainly entitled to both Plaintiff's complete medical file in Dr. Perez's possession and his Walgreens pharmacy records.

To the extent Plaintiff asks the Court to bar in advance any further subpoenas Defendant might serve - including one to Plaintiff's cardiologist - that request is premature and not ripe for

adjudication. No such subpoena has been served, and each subpoena must be assessed on its own merits, including the relevance of the witness's testimony to the damages inquest and any concrete showing of prejudice. A cardiologist's records, in particular, may bear directly on the nature, extent, and cause of Plaintiff's claimed injuries. Even more so where, as here, Plaintiff's cardiology records – which are part of Dr. Perez's chart – reveal that Otis did not complain to his cardiologist of anxiety, panic attacks or night terrors – the cardiologist's chart reveals "negative" for such complaints. Defendant expressly reserves the right to serve additional nonparty subpoenas as warranted by the evidence in advance of the damages inquest. A blanket, prospective ruling quashing hypothetical subpoenas would be inconsistent with the individualized, subpoena-by-subpoena inquiry these determinations require.

For all the foregoing reasons, it is respectfully submitted that Plaintiff's motion to quash the Dr. Perez Subpoena should be denied in its entirety. In the alternative, Defendant respectfully requests that the Court permit Defendant to obtain Plaintiff's complete medical file from Dr. Perez and Plaintiff's complete pharmacy records from Walgreens and all other pharmacies at which Plaintiff has filled prescriptions, on an expedited basis, with production to be completed no later than August 25, 2026, in advance of the previously scheduled damages inquest. We thank the Court for its attention to this matter.

Respectfully submitted,

Thomas A. Bizzaro, Jr.

cc:     All Counsel of Record